393 P.3d 946

**VARCO, INC., an Arizona corporation; RW Warehouse Corporation, an Arizona corporation, Plaintiffs/Appellees,**

v.

**UNS ELECTRIC, INC., an Arizona corporation, Defendant/Appellant.**

No. 2 CA–CV 2016–0144

Court of Appeals of Arizona, Division 2.

Filed March 23, 2017

Burris & MacOmber, P.L.L.C., Tucson, By D. Rob Burris and Karl MacOmber, Counsel for Plaintiffs/Appellees

Snell & Wilmer, L.L.P., Tucson, By Andrew M. Jacobs and W. Danny Green, Counsel for Defendant/Appellant

Judge Miller authored the opinion of the Court, in which Presiding Judge Staring and Judge Espinosa concurred.

## OPINION

MILLER, Judge:

¶ 1 Defendant UNS Electric appeals from the trial court's grant of a motion for new trial in favor of plaintiffs Varco and RW Warehouse Corporation, after the jury ruled in favor of UNS. The ruling was based on misconduct by UNS's counsel for examining witnesses regarding excluded evidence, as well as disclosure violations.[1] For the following reasons, we affirm.

### Factual and Procedural Background

¶ 2 The lawsuit arose out of a 2013 fire that destroyed a warehouse owned by Varco and rented by RW Warehouse Corporation, hereinafter collectively referred to as "Varco." Varco alleged the fire originated on a utility pole negligently installed and maintained by UNS in close proximity to the warehouse. Specifically, Varco alleged UNS's

---

1. UNS is represented by different counsel in this court.

negligence resulted in electrical "arcing" that caused the fire.

¶ 3 Varco filed motions in limine to preclude evidence that a cigarette butt was found on the site near the fire origination, that Varco did not possess property insurance, and certain opinions of UNS fire expert Keith Paffrath. The trial court granted the motion about the cigarette butt and lack of insurance, but reserved ruling on the admissibility of Paffrath's testimony "pending proof of proper foundation." The minute entry does not reflect the court's reasoning, and UNS did not designate a transcript of the motions hearing as part of the appellate record.[2] We presume the missing transcript would support the court's ruling, *Myrick v. Maloney*, 235 Ariz. 491, ¶ 11, 333 P.3d 818, 822 (App. 2014); further, we rely on the court's statements—made throughout trial—as to the rulings, their scope, and the court's rationale.

¶ 4 On the second day of trial, UNS cross-examined an employee who witnessed the fire, asking him if he and others smoked at the warehouse. After objection by Varco, the trial court reminded the parties that its motion-in-limine ruling was based on the fact that UNS was not expected to offer a witness who could "provide a reasonable basis for the jury to conclude that there was some other cause of the fire, whether it was smoking or anything else"; therefore, evidence of any specific people smoking or of a cigarette butt was not relevant. UNS stated it intended instead to introduce evidence of smoking to show a violation of the fire code, but the court still sustained the objection.

¶ 5 Resuming cross-examination, UNS immediately asked the witness about where smoking is allowed, Varco objected, and the trial court sustained the objection. UNS then asked where smoking is not allowed, Varco objected, and the court sustained the objection. At a bench conference, UNS argued that an expert would testify that smoking in certain areas would have been a violation of the fire code. The court again sustained the objection, concluding fire code violations were irrelevant unless there was testimony

that adherence to the fire code would have ameliorated the fire. Later, the court further explained its basis for precluding testimony about smoking and the fire code as both lacking relevance under Rule 401, Ariz. R. Evid., and more prejudicial than probative, confusing the issues, and confusing to the jury pursuant to Rule 403, Ariz. R. Evid.

¶ 6 The next day during direct examination, Varco's expert was asked, "There is no other evidence of anything else starting the pallets on fire other than the sparking; is that correct?" The expert agreed. During cross-examination, UNS asked about smoking areas at the warehouse and whether smoking is a frequent cause of fires. Varco objected, but the trial court overruled the objection on the ground that Varco opened the door to questions about the methodology the expert had used to eliminate other causes of the fire. The court still precluded questions regarding the cigarette butt because there was no evidence the fire began with smoking.

¶ 7 At the start of UNS's case in chief, it began by introducing deposition testimony of a Varco employee. Varco unsuccessfully objected based on a lack of pretrial designation. Several pages into the testimony, UNS's counsel read four questions and answers regarding who smoked at the warehouse and what the warehouse smoking policy was. Varco eventually objected, arguing that UNS had improperly introduced testimony regarding smoking. The trial court sustained the objection.

¶ 8 The absence of property insurance was the source of continuing dispute throughout trial, despite a pretrial ruling precluding reference to it. UNS argued in its written response and throughout trial that a lack of insurance showed a lack of inspection and a general failure to follow fire codes. During trial, the trial court sustained objections involving insurance, noting testimony regarding fire code violations was irrelevant and more prejudicial than probative. The court separately explained it had precluded UNS from offering proof that the warehouse had

---

**2.** *See* Ariz. R. Civ. App. P. 11(c)(1)(A) (appellant must order transcripts necessary for proper consideration on appeal if not already in official record).

never been permitted or inspected, based on lack of foundation as well as relevance.

¶ 9 Nonetheless, on the fifth day of trial, UNS asked the owner if the building had a certificate of occupancy, to which Varco objected. The trial court noted that it had reviewed the audio recording of the motions hearing and found this issue fell under compliance with local fire codes, and it was therefore still inadmissible. UNS argued its expert, Paffrath, would testify that had the fire codes been followed, the fire would have remained outside the building. The court concluded UNS could try to establish relevance and lay a foundation with Paffrath, but noted there was still a pending issue involving late disclosure with respect to Paffrath's testimony about fire codes.

¶ 10 Finally, during Paffrath's testimony, UNS asked, "Do you understand that the building was—was never inspected?" Varco objected and the trial court reiterated that fire code violations were irrelevant absent an opinion connecting violations to causation. The court further stated it did not "appreciate [UNS] asking the question, is it your understanding this thing has never been inspected, in anticipation of [Varco's] objection to this question." The court reiterated the basis of its ruling on the motion in limine, again stating that it reviewed the audio recording.[3] The court had the court reporter read back the question, concluded it was leading, and stated that it found the actions of UNS's counsel to be intentional. The court inquired about whether Varco wanted a curative instruction, but Varco did not ask for one and the court did not give one.

¶ 11 The jury found in favor of UNS, and Varco filed a motion for new trial arguing misconduct by UNS's counsel caused them unfair prejudice. After a hearing, the trial court granted the motion in an unsigned minute entry. UNS moved for reconsideration of the order for a new trial, and the court issued a detailed twenty-one page signed order reaffirming its ruling and denying the motion for reconsideration. UNS timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(A)(5)(a).[4]

## Motion for New Trial

■■■ ¶ 12 UNS generally argues the trial court abused its discretion by granting the motion for new trial because it did not commit misconduct, Varco did not suffer prejudice, and the court did not "consider whether the jury's verdict was correct."[5] The trial court has broad discretion in ruling on a motion for new trial. *See Leavy v. Parsell*, 188 Ariz. 69, 72, 932 P.2d 1340, 1343 (1997). A trial court abuses its discretion when it commits an error of law, or when the record lacks substantial evidence to support the court's finding. *Romer–Pollis v. Ada*, 223 Ariz. 300, ¶ 12, 222 P.3d 916, 918–19 (App. 2009). Further, "[w]e review an order granting a new trial under a more liberal standard than an order denying one." *Englert v. Carondelet Health Network*, 199 Ariz. 21, ¶ 5, 13 P.3d 763, 767 (App. 2000), *quoting State Farm Fire & Cas. Co. v. Brown*, 183 Ariz. 518, 521, 905 P.2d 527, 530 (App. 1995). This is because the denial may be a final disposition of the rights of the parties, and because "we recognize that trial judges disfavor new trial motions and will generally grant them only with great caution." *Liberatore v. Thompson*, 157 Ariz. 612, 620, 760 P.2d 612, 620 (App. 1988).

■■■ ¶ 13 When ruling on a motion for new trial based on attorney misconduct, the trial court "must decide whether the misconduct materially affected the rights of the

---

3. The trial court ultimately ruled that any evidence of fire code violations was inadmissible due to late disclosure.

4. Compliance with Rule 54(b) or (c), Ariz. R. Civ. P., is not required in these circumstances. *See Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, ¶ 25, 380 P.3d 659, 670 (App. 2016).

5. We note at the outset that Varco frequently has failed to cite to the record in the analysis section of its answering brief, as required by Rule 13(a)(7)(B) and (b)(1), Ariz. R. Civ. App. P. We could find its arguments waived due to these omissions, but in our discretion we consider them, because the trial court's ruling included extensive citations to the record. *Cf. Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, n.2, 263 P.3d 683, 686 n.2 (App. 2011) (waiver for failure to comply with Rule 13(a) discretionary).

aggrieved party," and reversal is only required "when it appears probable that the misconduct 'actually influenced the verdict.'" *Leavy*, 188 Ariz. at 72, 932 P.2d at 1343, *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 454, 652 P.2d 507, 527 (1982). Although there is no presumption of prejudice or lack thereof, "[i]f the misconduct is serious ... the judge should resolve any doubt in favor of the party aggrieved." *Id.*

## Misconduct

■ ¶ 14 UNS argues the trial court abused its discretion when it labeled several occurrences during trial as misconduct. It first contends it did not commit misconduct when asking generally about smoking because the pretrial ruling was limited to testimony about a single cigarette butt. Because we presume the missing transcript of the motions hearing supports the court's ruling as it pertains to smoking, *Myrick*, 235 Ariz. 491, ¶ 11, 333 P.3d at 822, UNS's claim that the ruling was limited to preclusion of a specific cigarette butt is not supported by the record. The court explained on the second day of trial that the ruling regarding the cigarette butt broadly addressed smoking. Despite this explanation and confirmation of the scope of its pretrial ruling, UNS asked questions about smoking at least three more times, including reading deposition testimony on the same topic.[6]

¶ 15 UNS also argues there was no misconduct because the trial court permitted questioning into smoking multiple times. First, UNS cites the court's rejection of Varco's non-specific objection to UNS's initial questions about smoking before counsel approached the bench and the court reviewed its motion in limine ruling. UNS also cites the court's failure to stop UNS's counsel from reading deposition excerpts regarding smoking until after the fourth question had been asked. These instances do not indicate the court changed its ruling on its motion in limine and intended to permit such questioning; rather, they indicate Varco did not quickly object to the precluded testimony, which was understandable because UNS had not provided pretrial transcript designations. UNS also relies on the fact that it was allowed to inquire into Varco's expert's methodology in excluding smoking as a cause; however, the court found that testimony admissible only because Varco opened the door when its expert testified that he had ruled out other causes. Importantly, the court expressly stated Varco had not opened the door to all questioning about smoking. Substantial evidence supports the court's finding that UNS repeatedly violated its motion in limine ruling regarding smoking.

■ ¶ 16 UNS next argues that the trial court abused its discretion to the extent it found misconduct based on the question it asked of Paffrath, its expert, on the seventh day of trial: "Do you understand that the building was—was never inspected?" UNS contends the court ruled that UNS could ask Paffrath about the inspection, and the question was not asked in bad faith.[7]

¶ 17 As with the smoking-related questions, UNS contends the trial court ruled that Paffrath could be asked about whether a certificate of occupancy had been obtained. Again, we presume the missing transcript

---

6. For example, on day two, UNS asked a former employee to use an exhibit to explain where smoking was permitted at the warehouse. After Varco objected as to relevance and the trial court sustained, UNS then asked, "Is there an area where smoking is not allowed?" On day six, counsel for UNS read into the record excerpts of the deposition of a warehouse employee, which included questions and answers about if any employees smoked, who smoked, if there was a policy about smoking in the warehouse, and if employees were allowed to smoke outside the warehouse.

7. UNS also argues the trial court appeared to have granted the motion for new trial based solely on this question, relying on "the fact that the Court had not exhibited any particular frustration or difficulty with UNS's questioning concerning smoking." That the court withheld expressing "frustration" while repeatedly restating its reasoning for its motion in limine ruling does not indicate that earlier incidents could not have been part of the court's calculus in granting the motion for new trial. *Cf. Liberatore*, 157 Ariz. at 621, 760 P.2d at 621 (court's earlier denial of mistrial did not preclude grant of new trial based on conclusion, "informed by the verdict, that misconduct had cumulatively colored the result").

supports the court's ruling. *Myrick*, 235 Ariz. 491, ¶ 11, 333 P.3d at 822. Moreover, during a hearing on motions in limine, the issue of a permit and certificate of occupancy was raised and the court precluded UNS from addressing the issue of "permit[ing] and inspect[ion]" because of a lack of foundation, adding that it was also irrelevant in that it was "remote in connection with the facts." On the second day of trial, the court also explained fire code violations were not relevant "unless someone [was] going to tie the violation of the fire code to either the cause of the fire" or increased damages. On the fifth day of trial, UNS asked a witness about a certificate of occupancy, Varco objected, and the court noted that UNS had not yet explained how the fire codes as related to inspections were relevant. Despite these repeated statements by the court, UNS asked its question on the seventh day of trial.

¶ 18 UNS also argues it had laid a proper foundation for the question, and that the trial court erred as a matter of law in finding there was none. It is clear from the context of the transcript, however, that the court used the word "foundation" in a general sense to explain the absence of a connection between building inspection and fire causation.[8] Moreover, the question was improper on its face because the court had previously deemed the issue irrelevant until UNS could establish a link to causation or damages.

¶ 19 Finally, UNS argues the leading question alone could not justify the new trial because it was "inconsequential" and permissible. As noted above, the trial court had not yet concluded the question was permissible. Moreover, the question itself strongly indicated to the jury that the building was never inspected. Having already repeated its reasoning for preclusion multiple times during the course of the trial, the court determined experienced counsel's actions in asking a leading question were intentionally designed

to avoid the expected objection by Varco. Substantial evidence, based on UNS's repeated course of conduct detailed above, supports this finding.[9]

### Prejudice

¶ 20 UNS also contends the misconduct cited by the trial court was not prejudicial. Prejudice occurs when the misconduct (1) is significant, such as knowing, deliberate violations of court orders; (2) "involves essential and important issues"; and, (3) is "apparently successful in achieving its goals." *Leavy*, 188 Ariz. at 73, 932 P.2d at 1344. The trial judge is in the best position to assess prejudice because he has "had the unique opportunity to hear the testimony and argument, observe its effect on the jury, and determine through his observations that the trial ha[s] been unfairly compromised." *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, ¶ 92, 276 P.3d 11, 39 (App. 2012). "[I]n contrast, we have only a cold record, which does not convey voice emphasis or inflection, or allow us to observe the jury and its reactions." *Id.*

¶ 21 UNS generally argues the misconduct did not rise to the level of what occurred in *Leavy*. In that case, which arose out of an auto accident, the trial court explicitly precluded a defense witness from testifying about the credibility of another witness and precluded the defendant from raising the "seatbelt defense." *Leavy*, 188 Ariz. at 70–71, 932 P.2d at 1341–42. Defense counsel violated the witness and seatbelt orders twice during opening statements and once during questioning of a witness. *Id.* at 71, 932 P.2d at 1342. Counsel also mentioned alcohol at least eleven times throughout the trial, despite the absence of evidence regarding alcohol use. *Id.* The court denied a motion for new trial and our supreme court reversed, concluding defense counsel intentionally sought to imply

---

8. As UNS notes, the question regarding a permit also raised a hearsay issue that the trial court referred to as "foundational," but UNS withdrew that line of questioning and the jury never heard it.

9. UNS additionally claims that deficiencies or incorrect statements in Varco's motion for new trial led the trial court to err in its ruling, and it

disputes the characterization and inclusion of certain trial excerpts cited in the motion. The court, however, issued its twenty-one page ruling after reviewing "the entire transcript of the eight trial days, as well as the court record of all prior proceedings"; we focus only on arguments that connect any claimed errors in the motion itself to those in the ruling.

the plaintiff was negligent by failing to use a seat belt and by using alcohol, and to bolster the credibility of a key witness, which were knowing violations of court orders. *Id.* at 71–73, 932 P.2d at 1342–44. As in *Leavy*, the issues raised here were key to the case, and UNS repeatedly raised them in front of the jury despite their having been precluded by the court.[10] *See id.*

¶ 22 UNS also argues no individual instance of misconduct was prejudicial. Even if UNS is correct about some of the individual events, the cumulative actions of counsel may support the granting of a motion for new trial. *See Sanchez v. Stremel*, 95 Ariz. 392, 395, 391 P.2d 557, 559 (1964) (single instance of improper argument in closing plus prejudicial misconduct throughout trial justified new trial); *see also Grant*, 133 Ariz. at 452–53, 652 P.2d at 525–26 (reviewing cases and finding misconduct "almost invariably . . . has been combined with other, serious error, the cumulative effect of which is to compel the conclusion that there was prejudice"). We address the more significant instances.

¶ 23 Regarding smoking, UNS contends the statements made were brief, peripheral, and not argued before the jury. However, on the second day of trial, UNS asked a witness twice about smoking—once immediately after having been reminded that such questions were precluded by the ruling on the motion in limine. On day six, UNS's counsel read into the record four deposition questions and answers regarding smoking. UNS made repeated references before the jury to smoking, suggesting it was a potential cause of the fire.

¶ 24 UNS also argues the trial court erred in relying on two instances of late disclosure to support its ruling. UNS contends the related discussions cannot be considered "misconduct" because they occurred out of the presence of the jury, citing *Grant*. But *Grant* states a new trial should be granted only when misconduct probably influenced the verdict or materially affected the rights of the other party and does not state that all of the effects of misconduct must be obvious to the jury. *See* 133 Ariz. at 454, 652 P.2d at 527. Here, the court concluded UNS's late disclosure "regularly disrupt[ed] opposing counsels' ability to focus on presenting their case," in order to gain an unfair advantage. The trial interruptions to discuss disclosure issues are also apparent in the record.[11] Reasonable evidence supports the court's finding the misconduct was significant, deliberate, and directed at key issues of causation and damages.

¶ 25 Finally, UNS argues the trial court erred by granting the new trial without finding "that the jury verdict was wrong." [12] To the extent UNS is arguing the court failed to find the misconduct was successful in achieving its goals, as required by *Leavy*, 188 Ariz. at 73, 932 P.2d at 1344, the court explicitly made such a finding in its final judgment, and it is supported by reasonable evidence. UNS also contends the prejudice ruling required the court to find "that the jury has reached a seriously erroneous result and it is necessary to set aside the verdict to avoid a miscarriage of justice," citing *State v. Fischer*, 238 Ariz. 309, ¶ 22, 360 P.3d 105, 111 (App. 2015). *Fischer*, however, involved a motion for new trial based on the verdict being "contrary to law or to the weight of the evidence," under Ariz. R. Crim. P. 24.1(c)(1). 238 Ariz. 309, ¶¶ 17, 25, 360 P.3d at 109, 111. Although that rule is similar to a civil motion for new trial under Rule 59(a)(1)(H), Ariz. R. Civ. P., the motion in this case was granted on the basis of the prevailing party's miscon-

---

10. UNS argues—without any support—that the "quick, unanimous verdict" it obtained also demonstrates the case was not "close." Even were this argument not waived for failure to cite authority, *see Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393 n.2 (App. 2007), it would fail because the jury determinations—what caused the fire or what caused it to spread—were the subjects of UNS's misconduct.

11. UNS argues one of the disclosure rulings could not support misconduct because the trial court should not have precluded the testimony. But UNS does not dispute that the disclosure was indeed after the deadline, which was the court's basis for finding misconduct.

12. UNS argues we may consider Varco's failure to specifically respond to this argument in its answering brief a confession of error. However, in our discretion, we choose not to do so. *See Perry v. Ronan*, 225 Ariz. 49, n.1, 234 P.3d 617, 620 n.1 (App. 2010).

duct pursuant to Rule 59(a)(1)(B), Ariz. R. Civ. P. Such misconduct does not require a finding that the jury has reached an erroneous result; indeed, misconduct itself may make it impossible to determine the effect on the outcome. *See Leavy*, 188 Ariz. at 73, 932 P.2d at 1344. The disclosure issues, repeated references to smoking, and repeated references to fire codes all support the court's conclusion that Varco was prejudiced by the actions of UNS. *See id.*

### Disposition

¶ 26 For the foregoing reasons, we affirm the trial court's ruling. Varco seeks attorney fees and costs pursuant to A.R.S. § 12–349 and Rule 25, Ariz. R. Civ. App. P., arguing the appeal was frivolous and UNS engaged in superficial analysis in its briefing. We do not find UNS's arguments frivolous and superficial; therefore, we deny the request for attorney fees.