NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LUANNA WEBB,
*Plaintiff/Appellee-Cross Appellant*,

*v.*

FARM BUREAU PROPERTY AND CASUALTY
INSURANCE COMPANY, et al.,
*Defendants/Appellants-Cross Appellees.*

No. 1 CA-CV 16-0299
FILED 12-12-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-015761
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Treon & Shook, PLLC, Phoenix
By Daniel B. Treon
*Counsel for Plaintiff/Appellee-Cross Appellant*

Gordon & Rees, LLP, Phoenix
By John L. Condrey, Molly C. Machold
*Counsel for Defendants/Appellants-Cross Appellees*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

¶1          Luanna Webb sued Farm Bureau Property and Casualty Insurance Company ("Farm Bureau"), alleging breach of the duty of good faith and fair dealing and breach of contract arising out of Farm Bureau's refusal to pay Ms. Webb's insurance claim after her son was killed in a motor vehicle accident. The other driver was at fault and underinsured. Farm Bureau denied Ms. Webb's claim for underinsured motorist benefits because it concluded Ms. Webb's son was not a resident of her household under the policy. A jury found in favor of Farm Bureau as to the breach of contract claim, but awarded Ms. Webb $25,000 in damages on her bad faith claim. Farm Bureau appeals, claiming that it was entitled to judgment as a matter of law ("JMOL"). Ms. Webb cross-appeals, arguing the verdict on the breach of contract claim should be overturned. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          Ms. Webb was insured under an automobile insurance policy issued by Farm Bureau, effective June 30, 2011 through June 30, 2012. Ms. Webb's home address at all relevant times was on Cheery Lynn Road in Phoenix, Arizona ("Cheery Lynn"). An earlier Farm Bureau policy listed Ms. Webb as well as her son, Nicholas Webb, as named insureds; the policy in place at the time of the accident named only Ms. Webb.

¶3          On August 29, 2011, Ms. Webb's other son, Justin Webb, was killed when he was struck by a car while riding his motorcycle. On September 13, 2011, Ms. Webb filed a claim for underinsured motorist benefits, asserting Justin was a resident of her household at the time of his death.

¶4          The claim was assigned to Farm Bureau adjuster Tim Cratch, who was assisted by an investigator, Paul Cully. Cratch and Cully reviewed Ms. Webb's policy and saw Justin was not listed as a named

insured or identified as a member of Ms. Webb's household at the time of her application.

¶5 Beyond named insureds, Farm Bureau's policy also provides coverage for other "household members." The policy defines household members as:

> A. A resident of your household who:
>
> > 1. Is related to you by blood, marriage, guardianship, adoption; or
> >
> > 2. Is a minor in your custody or in the custody of any "person" related to you by blood, marriage, guardianship or adoption.
>
> B. A "household member" includes such "persons" temporarily living elsewhere if they:
>
> > 1. Are unmarried; and
> >
> > 2. Usually make their home in your family unit.

¶6 Investigating whether Justin was a resident of Ms. Webb's household, Cully began by reviewing records maintained by the Insurance Services Organization ("ISO"). The ISO report revealed a USAA insurance policy in Justin's name listing an address on 39th Street in Phoenix. The USAA insurance policy lapsed in 2008. The ISO report also revealed several police reports showing the same 39th Street address, as well as state motor vehicle records indicating Justin lived on 39th Street. Cully also contacted police officers familiar with Justin's history, who recalled his address as 39th Street. The 39th Street address belongs to Ms. Webb's parents—Justin's grandparents—Samuel and Nelloise Garcia.

¶7 Cully visited the 39th Street address and interviewed Mrs. Garcia, recording the conversation. Mrs. Garcia stated that Justin lived at her home from the time he graduated high school until he enlisted in the Marine Corps in 2008, and lived there since his return from deployment in September 2008 until his death. At the home on 39th Street, Cully documented a few personal items of Justin's as well as mail addressed to him at that location. Cully did not interview Mr. Garcia, who was asleep when he visited.

¶8        Cully then interviewed Ms. Webb at her Cheery Lynn home. Ms. Webb claimed that Justin had always lived with her, though he sometimes spent nights at his grandparents' home on 39th Street. Ms. Webb showed Cully Justin's room, which contained Justin's clothes, although Cully thought the room "too clean" to have been lived in recently. Ms. Webb also played Cully voice messages left for Justin on the home telephone regarding Justin's truck and a court fee recovery. While Cully was interviewing Ms. Webb, Mrs. Garcia called. Ms. Webb invited her to speak to Cully, and after she handed the phone to him, Mrs. Garcia told Cully she had no recollection of speaking with him and further stated Justin lived at Ms. Webb's Cheery Lynn home. Cully believed the call was set up by Ms. Webb, and relied more heavily on what Mrs. Garcia had said to him when he interviewed her at her home. Cully did not disclose to Ms. Webb that he found mail addressed to Justin at the 39th Street address.

¶9        Cully considered further investigation based on the conflicting information, including whether to follow up with Justin's grandfather, contact other family members such as Nicholas, locate and review the USAA policy, or write to Ms. Webb for further documents, but Farm Bureau advised Cully further investigation was unnecessary. In addition to the results of the interviews it conducted, Farm Bureau's research had revealed a history of accident reports, police reports, other insurance policies, and other documentation indicating Justin did not live with Ms. Webb, but resided at the 39th Street home.

¶10        In November 2011, Farm Bureau determined Justin did not live at Ms. Webb's home, was not a "household member," and denied her claim for coverage. In its letter denying her claim, Farm Bureau stated it based its denial on a "review of the information and documents received to date . . ." and denied her claim because it did not meet "the Policy's terms, definitions, conditions or limitations . . . ." Farm Bureau's letter did not set out the policy definition of "household member" or explain to Ms. Webb what it understood "household member" to mean, although it did state that household member was defined in her policy. The denial stated Farm Bureau would gladly review any further information should Ms. Webb submit it, suggesting Farm Bureau could revisit its claim denial.

¶11        Based on Farm Bureau's belief that Ms. Webb had lied about where Justin lived, Cully submitted a fraud referral to the State of Arizona

4

Department of Insurance ("DOI") in December 2011.[1] DOI did not pursue the fraud claim. Neither Farm Bureau nor DOI informed Ms. Webb about the fraud referral; she first learned of it during the subsequent litigation.

¶12 On October 9, 2013, Ms. Webb faxed Cratch asking for "each and every reason for Farm Bureau's conclusion that [Justin] was not a resident of my house." She also asked him to send her any recorded statements the company took and a copy of her policy. When her letter went unanswered, Ms. Webb mailed another letter to Cratch repeating her requests, stating she was "very upset by all of this and think it's only fair that Farm Bureau answers my questions." Cratch responded via letter dated November 7, telling Ms. Webb that prior losses, police reports, police officers, mail, and insurance policies evidenced that Justin did not reside at her house. Cratch provided a copy of Ms. Webb's policy with his November 7 letter. On November 13, Ms. Webb faxed Cratch asking for the records Farm Bureau relied upon in reaching its conclusion. Ms. Webb also asked for the dates of the documents relied upon and the date of Cully's interview with her mother, as well as a copy of that interview. Ms. Webb stated that she received no response. Cratch's claim file documents that he received Ms. Webb's October and November letters.

¶13 On November 22, 2013, Ms. Webb filed a *pro se* complaint in superior court claiming breach of contract and bad faith. In a letter dated November 26, Ms. Webb notified Cratch that she had filed the complaint and again repeated her request for documents and the recorded statements. Over the next several months, Ms. Webb repeatedly sought documents from Farm Bureau. Ms. Webb continued to email Cratch asking for the records, stating her desire to avoid litigation. Cratch's file notes reflect he received repeated email requests from Ms. Webb for documents and that he responded to those requests. Beyond the November 7 letter, however, Farm Bureau did not offer in evidence copies of any letters or emails responding to Ms. Webb's queries. According to Cratch's file notes, he sometimes responded to Ms. Webb by sending her additional copies of documents he had sent to her before. He sent some documents to Ms. Webb by certified mail on March 20, 2014. Having received some of the records, on March 21, Ms. Webb wrote to Cratch again to ask for a copy of Mrs. Garcia's interview; in her letter, she provided reasons why certain records might indicate Justin lived at 39th Street even though she claimed he

---

[1]      Section 20-466(G) provides: "An insurer that believes a fraudulent claim has been or is being made shall send to the director, on a form prescribed by the director, information relative to the claim . . . and any other information the fraud unit may require." A.R.S. § 20-466(G).

resided at Cheery Lynn, and also provided some additional documentation—a statement from White Pages—indicating Justin lived with her. Ms. Webb also offered to provide a statement from Nicholas. Ms. Webb advised Cratch that she had served the lawsuit, but asked Farm Bureau to reconsider its position to avoid litigation and give her meaningful time to review the documents prior to Farm Bureau filing its answer. Ms. Webb and Farm Bureau proceeded with litigation.

¶14 Eventually represented by counsel, as the litigation proceeded, Ms. Webb made multiple settlement offers, first offering to settle for the policy limits of $25,000. On January 5, 2015, Ms. Webb made an offer of judgment pursuant to Arizona Rule of Civil Procedure ("Rule")[2] 68 for $37,500, inclusive of costs, interest, and legal fees. Farm Bureau did not accept the offer of judgment, later submitted a counteroffer of $20,000, then withdrew the counteroffer.

¶15 At trial, Ms. Webb argued Justin lived at her house and that Farm Bureau's investigation was inadequate. Ms. Webb called several relatives who testified Justin lived with Ms. Webb on Cheery Lynn. The relatives testified that in the last eight months of his life, Justin's grandparents had banned him from their home on 39th Street for drug use. Nicholas Webb testified Justin primarily lived at Cheery Lynn and kept his clothes and day-to-day personal items such as toiletries there. Nicholas testified Justin had only a few items of old clothing at 39th Street, and that while Justin sometimes stayed at his girlfriend's house, he never lived there.

¶16 Ms. Webb testified that Farm Bureau never advised her who qualified as a "household member"—either at the time of her application for insurance or after she made her claim—nor explained to her what information she could provide to help prove that Justin lived with her. According to Ms. Webb, neither Cody Smith, the Farm Bureau agent who sold Ms. Webb her insurance policy, Cratch, nor Cully explained to Ms. Webb what "household member" meant, although agent Smith testified that he believed he would have asked her who lived with her while filling out her insurance application.

¶17 Ms. Webb's insurance expert, David Frangiamore, testified to insurance practices and industry customs and the duties Farm Bureau owed Ms. Webb in its investigation. On his review of the record he opined

---

[2] The Rules underwent significant revisions effective January 1, 2017. Ariz. R. Civ. P., prefatory cmt. to the 2017 amendments. Unless otherwise noted, we cite the Rules in effect at the time of this dispute.

that Farm Bureau's investigation was inadequate and deficient. He testified Farm Bureau failed to review relevant case law defining "household member"; gathered only limited information, some of it refuted and outdated; failed to fully consider all factors relevant to determining if Justin was a "household member"; and failed to properly apprise Ms. Webb of its investigation. Frangiamore testified that Farm Bureau had an obligation to disclose to Ms. Webb any relevant materials, and to respond to her questions regarding the denial of her claim.[3]

¶18        Frangiamore further opined that Farm Bureau was wrong to submit the fraud referral to DOI, and testified the referral could negatively impact Ms. Webb in the future. Cratch testified that although a fraud referral was submitted, he never concluded there was fraud by Ms. Webb, and at the time the claim was referred to Cratch, and subsequently Cully, no fraud was suspected. Cully testified that information provided by Ms. Webb in her claim differed from information she provided when she originally took out the policy and that said discrepancy raised questions warranting referral to DOI. Ms. Webb and Nicholas testified to the emotional toll the investigation inflicted on Ms. Webb and how it prevented her from fully moving past Justin's death.

¶19        At the close of Ms. Webb's case, Farm Bureau moved for JMOL, arguing Ms. Webb had failed to offer evidence sufficient to support a bad faith claim. The court denied the motion.

¶20        In its defense, Farm Bureau argued its investigation was adequate and that it gave equal consideration to information Ms. Webb submitted, including her own statements, as it gave to the other evidence it obtained, but found Ms. Webb's information and statements unreliable. Cratch testified he gave fair consideration to Ms. Webb's claim; he stated his job was simply to evaluate the claim and stated he did not slant his evaluation towards denial. Cratch testified that, at the time Farm Bureau denied the claim, he telephoned Ms. Webb and advised her of the documents it relied upon in making its determination. In addition to the evidence it relied upon in deciding to decline the claim, Farm Bureau presented testimony from Ms. Webb's first-born son, Sam Phillips, who testified Justin did not live at Cheery Lynn, but lived at 39th Street and his girlfriend's house.

---

[3]        On cross-examination, Cratch agreed the insurer had an obligation to respond to an insured's questions concerning a claim.

¶21        Farm Bureau's expert witness, Rodney Ball, opined that Farm Bureau made an adequate and timely investigation and gave Ms. Webb equal consideration in determining whether the policy covered Justin. Ball testified Farm Bureau conducted its investigation in accordance with industry practices, and disagreed with any suggestion that Farm Bureau's responsibility was to "leave no stone unturned." At the close of Farm Bureau's case, Ms. Webb moved for JMOL on both claims, which was denied.

¶22        Before closing arguments, and over Farm Bureau's objection, the court gave the jury an instruction regarding the definition of "resident of the household" as used in insurance policies ("the *Mendota* instruction"). The instruction cited factors taken from *Mendota Insurance Company v. Gallegos*, 232 Ariz. 126, 131, ¶ 23 (App. 2013), to help guide the jury in determining whether Justin was a resident of Ms. Webb's household.

¶23        During closing, Ms. Webb's counsel specifically highlighted the jury instruction in urging the jury to find Farm Bureau breached its duty of good faith, stating a factor it should consider in determining bad faith was the company's lack of investigation into the relationship between Ms. Webb and Justin. Ms. Webb's counsel argued that Farm Bureau's failure to consider that factor "[f]lies right in the face of the instruction of law the court is going to give—or the court has already given. That is patent bad faith . . . ." Ms. Webb's counsel further argued that Farm Bureau acted in bad faith because it hid its investigation from Ms. Webb, withheld documents, and did not treat her equally, but instead worked against her.

¶24        The jury found in favor of Farm Bureau on the breach of contract claim, but found in favor of Ms. Webb on the bad faith claim, and awarded Ms. Webb $25,000 in damages. Farm Bureau moved for JMOL on the bad faith claim, arguing the jury's finding that it did not breach the contract "foreclose[d] the possibility that the bad faith claim could be premised on the wrongful denial of the claim for benefits, because benefits were not owed under the policy." Ms. Webb moved for JMOL on the breach of contract claim. The court denied both parties' motions, finding the jury heard adequate evidence to support its verdicts.

¶25        Both parties moved for attorneys' fees as the successful party under Arizona Revised Statutes ("A.R.S.") section 12-341.01(A). The court ruled Ms. Webb was the prevailing party and awarded her $181,232.00 in attorneys' fees and $8,640.60 in costs. The court also awarded Ms. Webb $41,960.74 as sanctions under Rule 68.

¶26 Farm Bureau timely appealed, and Ms. Webb timely cross-appealed.[4] We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**DISCUSSION**

I. Denial of Farm Bureau's Motions for JMOL

¶27 Farm Bureau argues the superior court erred by denying its motions for JMOL because: (1) Ms. Webb offered no evidence that Farm Bureau discounted undisputed evidence that Justin lived at her home or that a more thorough investigation by Farm Bureau would have produced relevant information; and (2) there could be no bad faith damages where there was no coverage owed.

¶28 We review *de novo* the grant or denial of a motion for JMOL. *Glazer v. State*, 237 Ariz. 160, 167, ¶ 29 (2015). The superior court should grant JMOL when there is no issue of fact and the movant is entitled to judgment as a matter of law. *Id.* We review the evidence in the light most favorable to Ms. Webb as the non-moving party. *Id.* If reasonable people could differ about the conclusions drawn from the evidence, the court should deny the motion. *Id.* at ¶ 28.

¶29 An insurance carrier has the obligation to conduct an adequate investigation, act reasonably in evaluating a claim, and act promptly in paying a legitimate claim. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, ¶ 21 (2000). When an insured alleges an insurer is liable for bad faith based on its investigation of a claim, the insurer cannot be held liable if it acted reasonably in performing the investigation, if it had a reasonable basis for denying the claim, and if further reasonable

---

[4] Ms. Webb points out that Farm Bureau's opening brief failed to include a Statement of the Issues, as required by Arizona Rules of Civil Appellate Procedure ("ARCAP") 13(a)(6). A non-conforming brief may preclude relief. *See In re Aubuchon*, 233 Ariz. 62, 64-65, ¶ 6 (2013). However, in our discretion, we consider these arguments because Farm Bureau's opening brief adequately addressed the relevant issues and stated its arguments clearly, causing Ms. Webb no prejudice. *See Varco, Inc. v. UNS Elec., Inc.*, 242 Ariz. 166, 170 n.5, ¶ 12 (App. 2017) (stating waiver for failure to comply with ARCAP 13(a) is discretionary); *see also Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (requiring that opening briefs present and address significant arguments, supported by authority, setting forth the parties' position on issues in question).

investigation would not have revealed any additional relevant facts. *Aetna Cas. & Sur. Co. v. Superior Court (Gordinier)*, 161 Ariz. 437, 440 (App. 1989).

¶30            The jury ultimately found for Farm Bureau on the breach of contract claim, implicitly finding the insurer's denial of coverage was objectively reasonable. An award of bad faith damages based upon an alleged inadequate or unreasonable investigation is foreclosed when there is no coverage for the claim, *see id.*, however, an insured need not prevail on a coverage claim for breach of contract in order to recover for bad faith premised on other evidence. *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 509 (1992). An insurer still may be liable for bad faith if the jury finds it acted unreasonably in the manner in which it processed a claim or if it concludes the insurer breached another duty to the insured. *See Zilisch*, 196 Ariz. at 237, ¶ 20. In investigating and processing claims, insurers have duties of a fiduciary nature, including equal consideration, fairness, and honesty. *Id.* Insurers may not frustrate the insured's right to honest and fair treatment, and may do nothing that jeopardizes the insured's security under the policy. *Id.* at 237-38, ¶¶ 20-21.

¶31            The jury heard and considered evidence that Farm Bureau withheld relevant documents from Ms. Webb, failed to respond to Ms. Webb's letters and emails, and failed to give her reasonable opportunity to present additional evidence tending to indicate that Justin lived with her. The jury also was given evidence that Farm Bureau failed to advise Ms. Webb of the terms of her policy and their meanings, frustrating her ability to support her claim for coverage.

¶32            Frangiamore testified that, as a principle in an insurance claim, Ms. Webb was entitled to know what benefits were potentially available to her under the policy, was entitled to know whether Farm Bureau had doubts as to coverage for her claim, and was entitled to updates regarding the investigatory process. Frangiamore testified that Farm Bureau's failure to update Ms. Webb regarding the claim process deprived Ms. Webb a fair opportunity to present information. He further opined that Farm Bureau's failure to disclose relevant documents to Ms. Webb when it denied her claim violated industry customs and practices. Ms. Webb and Nicholas testified to the emotional strain Ms. Webb suffered as a result of the investigation and litigation.

¶33            The jury also heard expert testimony that the DOI fraud referral by Farm Bureau was made in bad faith and could cause Ms. Webb harm in the future. Although insurance companies have a statutory duty to refer claims they believe to be fraudulent, *see* A.R.S. § 20-466(G), the jury

in this case heard Farm Bureau claims representatives testify that they never formally came to that "belief" nor advised Ms. Webb that they believed she had submitted a fraudulent claim. Regardless of whether the fraud referral was reasonable or placed in bad faith, there was sufficient independent evidence in the record to support the jury's finding of bad faith based on Farm Bureau's failure to act in a fair and honest manner, and to give its insured's interests equal consideration.

¶34        The jury was instructed that, "[i]n all aspects of investigating . . . a claim, Farm Bureau [was] required to give as much consideration to [Ms.] Webb's interests as it does to its own interests." During closing, Ms. Webb's counsel argued Farm Bureau acted in bad faith, not only as to the adequacy of its investigation, but also in the manner Farm Bureau interacted with Ms. Webb during and following its investigation. The jury could very well have based its bad faith verdict on a failure by Farm Bureau to give equal consideration to Ms. Webb's interests, to treat her fairly, or to act honestly in its dealings with Ms. Webb.[5] We hold the court did not err in denying Farm Bureau's JMOL motions at the close of Ms. Webb's case or after the jury returned the defense verdict on coverage.

II.        Cross-Appeal of the Denial of Ms. Webb's Motion for JMOL

¶35        Ms. Webb argues the court erred by denying her JMOL on the breach of contract claim. Ms. Webb argues that unrebutted evidence presented at trial established Justin was a member of Ms. Webb's household and Farm Bureau therefore breached the contract by denying her claim for underinsured coverage for his death. She does not argue the jury was improperly instructed, only that its verdict was against the weight of the evidence.

¶36        In contrast to the evidence Ms. Webb presented in support of her contention that Justin lived with her, Farm Bureau presented evidence showing Justin did not. Although the USAA policy was outdated, it

---

[5]        Farm Bureau argues the jury must have based its bad faith verdict solely on Ms. Webb's contention that the insurer performed an inadequate investigation of her claim; however, Farm Bureau did not ask for a special interrogatory as to that point. *See* Rule 49(g); *Powell v. Langford*, 58 Ariz. 281, 287 (1941) (stating special interrogatories may be submitted to the jury along with a general verdict). Accordingly, we will uphold a jury verdict "[i]f any substantial evidence could lead reasonable persons to find the ultimate facts to support a verdict." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, ¶ 6 (App. 2011).

showed Justin's address as 39th Street. Mrs. Garcia's initial statement to investigator Cully was that Justin lived with her, and Cully found personal items and clothing at the 39th Street address. The ISO report that Farm Bureau obtained revealed several more contemporaneous documents and police reports indicating Justin resided at 39th Street. Both Ms. Webb and Nicholas conceded that Justin did in fact stay at the 39th Street address at times, sometimes for up to a couple of weeks, undercutting Ms. Webb's claim that Justin always lived with her. This evidence was sufficient for the jury to determine that Justin did not reside at Cheery Lynn and was not a "resident" of Ms. Webb's household, and therefore that the underinsured coverage did not extend to Justin and Farm Bureau did not breach its contract with Ms. Webb. On this record, the court did not err by denying Ms. Webb's JMOL on the breach of contract claim.

III. "Resident" of Household Jury Instruction

¶37 Farm Bureau argues the court committed reversible error when it gave the *Mendota* instruction broadly identifying factors to be considered in determining whether someone is a "resident of your household" under the relevant policy language. Farm Bureau argues the *Mendota* instruction was improper because the contract was unambiguous and that a general instruction on how to interpret a contract provision was sufficient to guide the jury in its deliberations. On appeal, Farm Bureau further argues the instruction was improper because it "gave the jury reason to find that the claim was handled in a dilatory manner if they found that Farm Bureau did not address each of the enumerated factors addressed . . . ." We find this issue moot. Farm Bureau prevailed on the breach of contract claim, precluding a finding of bad faith based on an inadequate investigation. As discussed above, however, the record supports the bad faith verdict against Farm Bureau based on evidence unrelated to the reasonableness of its investigation.

IV. The Court's Finding that Ms. Webb was the Prevailing Party

¶38 Farm Bureau challenges the superior court's award of attorneys' fees to Ms. Webb, arguing she was not the "successful party" under A.R.S. § 12-341.01(A).[6] Farm Bureau argues the court misapplied the "percentage of success" or "totality of litigation" tests. Ms. Webb contends

---

[6] Ms. Webb filed a Motion to Strike Section VI of Appellant/Cross-Appellee's Reply Brief and Answering Brief on Cross-Appeal. Because we find Section VI contained no new argument on appeal, we deny that motion.

the court correctly determined that she was the successful party because the judgment exceeded the amount she had offered to accept in settlement under A.R.S. § 12-341.01(A).

**¶39**		The superior court has broad discretion in determining the successful party under A.R.S. § 12-341.01, and its determination "will not be disturbed on appeal if any reasonable basis exists for it." *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562, ¶ 39 (App. 2014) (internal quotations omitted). This court will not disturb an award of attorneys' fees absent an abuse of discretion. *Id.*

**¶40**		Section 12-341.01(A) states that the court may award fees to "the successful party" in an "action arising out of a contract," and further provides:

> If a written settlement offer is rejected and the judgment finally obtained is *equal to or more favorable* to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror *is deemed to be* the successful party from the date of the offer and the court may award the successful party reasonable attorney[s'] fees.

A.R.S. § 12-341.01(A) (emphasis added).

**¶41**		The purposes of § 12-341.01(A) include mitigating the burden of the expense of litigation and encouraging more careful analysis in litigation. *Hall v. Read Dev., Inc.*, 229 Ariz. 277, 282, ¶ 18 (App. 2012). Parties assess exposure to liability for attorneys' fees and costs as part of this careful analysis, and attorneys' fees and costs are included in the final judgment when comparing a judgment to a prior settlement offer. *See id.* at ¶¶ 16-18.

**¶42**		Ms. Webb made multiple offers of settlement, including an offer of judgment on January 5, 2015 for $37,500, inclusive of damages, costs and attorneys' fees, Farm Bureau did not respond, but counteroffered on January 15 for $20,000, and then withdrew its counteroffer. Ms. Webb was awarded a judgment of $256,833.34, which included the $25,000 jury verdict, $181,232 in attorneys' fees, and $8,640.60 in costs. The judgment also included Rule 68 sanctions totaling $41,960.74. Because the judgment was more favorable than each of Ms. Webb's prior settlement offers, the

court did not abuse its discretion in deeming Ms. Webb to be the successful party and awarding her costs and reasonable attorneys' fees.[7]

V.      Attorneys' Fees on Appeal

**¶43**      Both parties request costs and attorneys' fees on appeal pursuant to ARCAP 21(a) and A.R.S. §§ 12-341.01, 12-342, and 12-349. Because Ms. Webb is the successful party on appeal under § 12-341.01(A), we award her costs and reasonable attorneys' fees.

**CONCLUSION**

**¶44**      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[7]      Ms. Webb sought $221,391 in fees; the court awarded her $181,232 based on its consideration of the factors discussed in *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 570 (1985), and *Wistuber v. Paradise Valley Unified School District*, 141 Ariz. 346, 351 (1984).  The court found "it . . . difficult to isolate [the] fees incurred to prosecute bad faith from those necessitated by the underlying contract claim[,]" that the bad faith claim posed no novel legal issue, imposing a fee award upon Farm Bureau would not unduly burden the company, and that while both sides initially showed a willingness to settle, increasing fees put settlement out of reach.