NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

IN THE MATTER OF THE ESTATE OF:

RICHARD STEPHEN LEE, *Deceased.*

---

ANISSA GUTIERREZ, *Petitioner/Appellant,*

v.

STEPHANIE LEE, *Respondent/Appellee.*

---

No. 1 CA-CV 23-0337

FILED 08-29-2024

---

Appeal from the Superior Court in Maricopa County
Nos. PB2022-050019
PB2022-070006
The Honorable Sarah Selzer, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Radix Law, Scottsdale, AZ
By C. Adam Buck
*Counsel for Petitioner/Appellant*

Stephanie Lee, Ridgeland, WI
*Respondent/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

**P A T O N,** Judge:

¶1 Anissa Gutierrez appeals the superior court's ruling that the document at issue is an invalid will. For the following reasons, we affirm in part but vacate and remand in part for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2 Richard Stephen Lee died on January 1, 2022. Days after his death, his adult daughter, Stephanie Lee, was appointed his personal representative after filing an application for informal appointment. Gutierrez—Richard's former girlfriend's daughter—filed a separate petition asking the court to remove Lee as Richard's personal representative and appoint Gutierrez instead. The superior court consolidated the matters.

¶3 Gutierrez submitted a document she claimed was Richard's valid will ("the Document"). The Document is entirely handwritten. It is dated January 21, 2021, and titled "LAST WILL and TESTAMENT of RICHARD STEPHEN LEE." The Document names Gutierrez as executor, makes specific devises to Gutierrez and her younger brother and cousin, makes funerary requests, and contains a residuary clause benefitting Lee's daughter and Richard's granddaughter, Sophia. The end of the Document contains text stating what appears to be "SIGH" or "SIGN" that is crossed out with "RICHARD STEPHEN LEE" handwritten in block-letter print next to it. Immediately below "RICHARD STEPHEN LEE" is a cursive signature, followed by the handwritten word, "WITNESS" listed twice, with four spaces in between. Along with the Document, Gutierrez submitted several examples of Richard's writing and signature.

¶4 Lee argued the Document was invalid because the signature was forged. Gutierrez maintained the Document was Richard's validly executed last will. The superior court set an evidentiary hearing for February, with an exhibit submittal deadline of February 3rd. Gutierrez and Lee each hired handwriting analysts who analyzed the Document,

prepared reports, and testified regarding their findings at the hearing.  Lee did not submit her handwriting analyst's report before the deadline.  At Lee's request, the hearing was continued to April.

**¶5**         Gutierrez and her 16-year-old brother testified at the hearing.  Gutierrez's brother said he observed Richard reviewing the written Document one day after school.  He said Richard told him that he wanted to keep the will "a secret" but because Gutierrez's brother saw the Document, Richard said he would tell him what it was—a will leaving the brother Richard's "mechanical possessions" and motorcycles and house to Gutierrez.  Gutierrez's brother testified Richard then signed the Document in front of him.

**¶6**         Gutierrez testified that on that same afternoon, Richard told her he "want[ed] to go over a few things with [her]," specifically, that he "need[ed] to write a will" in which he would leave his property to her, and her brother and cousin.  She responded, "why me[,]" to which Richard said, she was like a daughter to him, he loved her, and wanted her "to be well off" and "taken care of" after he died.  Gutierrez testified Richard told her he would put his will in the safe and gave her the safe code, but she forgot the code and ultimately had to hire a locksmith to retrieve the Document after he passed away.

**¶7**         Gutierrez's analyst, a Department of Public Safety forensic scientist, testified he believed Richard made the cursive signature.  The court admitted his report into evidence.  Lee presented competing testimony from her handwriting analyst, a forensic document examiner, who believed the cursive signature was not Richard's because it contained a "pen lift" that the other sample signatures did not have.  Both experts testified that they believed the remaining text in the Document was handwritten by Richard.  Lee attempted to admit her expert's report into evidence, but Gutierrez objected to its admission on untimeliness grounds; the court agreed and did not admit it.

**¶8**         In the court's ruling on whether the Document was Richard's valid will, it noted the parties agreed that the text of the Document was written by Richard, and their only dispute was whether he signed the Document.  The court found Lee's analyst to be more persuasive than Gutierrez's, noted it did not find Gutierrez's and her brother's testimony regarding the Document and their conversations with Richard about it to be credible, and concluded "the signature on the Document was not written by [Richard]," he therefore died intestate, and appointed Lee as his personal representative.

**¶9**        Gutierrez timely appealed the superior court's judgment. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶10**        Gutierrez argues that (1) the superior court erred by considering Lee's handwriting analyst's report, which was not admitted into evidence; (2) the superior court's finding that the cursive signature was not Richard's was unsupported by the "overwhelming" weight of the evidence; and (3) Richard's handwritten block-letter name at the end of the Document satisfies the signature requirement for a holographic will, even if the cursive signature was not his.

**¶11**        We note at the outset that Gutierrez asks us to reverse the superior court's decision because Lee filed a deficient answering brief—both because Lee did not comply with the court's prior order to file certificates of service and compliance and because the answering brief does not provide record cites or case law as required by Arizona Rule of Civil Appellate Procedure ("ARCAP") 13 and 14.  Gutierrez is correct that Lee's first answering brief did not include certificates of compliance and service. We ordered Lee to file the certificates, and noted that failure to comply may result in sanctions, including striking her answering brief.  Lee filed a duplicate answering brief, along with a picture of a sentence from the certificate of compliance.  We struck the duplicate answering brief and forwarded the first answering brief to Gutierrez.

**¶12**        Gutierrez is also correct that the answering brief contains no specific record citations or case law supporting her arguments.  We could find Lee's arguments waived due to the omissions.  *See Varco, Inc. v. UNS Electric, Inc.*, 242 Ariz. 166, 170 n.5 (App. 2017) (noting that waiver for failure to comply with ARCAP 13 is discretionary).  But in the exercise of our discretion, we decline to apply waiver, and will consider Lee's arguments. *See id.*

    **I.**    **The superior court erred by relying on the unadmitted report from Lee's analyst in rendering its judgment, but any error was harmless because Lee's analyst testified at the hearing.**

**¶13**        Gutierrez contends the superior court improperly relied on a report made by Lee's handwriting analyst in concluding the signature on the Document was not Richard's.

**¶14** During the evidentiary hearing, the superior court ruled that the untimely-submitted report would not be admitted into evidence. But in its decision, it stated: "Having considered the testimony *and reviewed the reports from both handwriting analysts*, the Court concludes that Ms. Lee's analyst presented testimony and a report that was more persuasive than Ms. Gutierrez's analyst." (Emphasis added.) Although the court had discretion not to admit the report, once the court excluded it, it was improper for the court to rely on it to support its decision that the cursive signature was not Richard's.

**¶15** At the evidentiary hearing, however, Lee's handwriting analyst testified about how she arrived at the conclusion that Richard did not make the cursive signature. The court expressly stated it considered both analysts' testimony in reaching its decision. Thus, other evidence in the record—that the court expressly stated it relied on—supported its decision. *See Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) ("An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision.").

## II. The record supports the superior court's conclusion that the cursive signature in the Document was not Richard's.

**¶16** Gutierrez argues the superior court's conclusion that the cursive signature was not Richard's was clearly erroneous and not supported by the weight of the evidence. Whether part of a holographic will is in the decedent's handwriting is a question of fact. *In re Biehn's Estate*, 41 Ariz. 403, 415–16 (1933). We affirm the superior court's findings of fact absent clear error. *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5 (App. 2000). The superior court "is in the best position to judge the credibility of the witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom." *Goats v. A.J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171 (1971).

**¶17** The court heard testimony addressing the Document and signature from both parties' handwriting analysts, as well as testimony from Gutierrez and her brother regarding the circumstances of Richard drafting the Document. Gutierrez's analyst believed the cursive signature to be Richard's; Lee's analyst did not. The record reflects that the court carefully considered both parties' evidence, found Lee's analyst's testimony that the cursive signature was not Richard's to be more persuasive, and determined Gutierrez's and her brother's testimony not to be credible. We

will not substitute our discretion for the superior court's or reweigh conflicting evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

### III. The superior court needs to determine whether the block-letter name in the Document is Richard's signature.

**¶18** Gutierrez alternatively argues that even if the cursive signature was not Richard's, the handwritten block-letter name at the end of the Document was Richard's signature and therefore the Document is a valid holographic will under Section 14-2503. Section 14-2503 provides: "A will that does not comply with [Section] 14-2502 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator."

**¶19** Here, the parties' expert testimony appeared to center around whether the cursive signature was Richard's; the experts' dispute about its authenticity was based on the "pen lift" in the Document that Lee's expert testified was not present in the other signature examples. Both experts agreed the rest of the text in the Document was Richard's handwriting. Gutierrez alternatively argued that the handprinted block-letter name was also Richard's signature and therefore sufficient to make the will valid under Section 14-2503.

**¶20** The court made express factual findings that it found Lee's expert "more persuasive" than Gutierrez's, and that Gutierrez's and her brother's testimony "about conversations they had with [Richard] about the Document" was not credible. It then concluded because "*the signature* on the Document was not written by [Richard]," Richard did not sign the will, and therefore died intestate. (Emphasis added.) The court's use of the singular version of "signature" suggests that it only determined the cursive signature was not Richard's. It is unclear if the court considered whether the handwritten block-letter name was Richard's "signature" and even if it did, the court did not make an express factual finding about it.

**¶21** "The important thing is that the testamentary part of the will be wholly written by the testator and of course signed by him." *In re Morrison's Estate*, 55 Ariz. 504, 510 (1940). Although the court found that the Document itself demonstrated *testamentary* intent, it did not resolve the question of whether the Document contains *signatory* intent regarding the handwritten block-letter name. *See Bishop v. Norell*, 88 Ariz. 148, 151 (1960) ("[T]he general rule is that a writing or memorandum is 'signed' in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper,

namely, by writing, printing, lithographing, or other such mode, provided that same *is done with the intention of signing*.") (Emphasis added.); *see also In re Wilkin's Estate*, 54 Ariz. 218, 222 (App. 1939) (even if testamentary intent is clear, the decedent must authenticate the Document as a testamentary instrument) (citing *In re Estate of Tyrrell*, 17 Ariz. 418, 422 (1915) ("The omission of any of the requirements of the statute will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will . . . and there is no question of his testamentary purpose[.]"))

**¶22** We therefore vacate the portion of the court's order to the extent it found that Richard died intestate, and remand for the court to determine whether Richard intended the handwritten block-letter name to be his signature. We express no opinion on how it should be resolved.

### IV. We decline to award Gutierrez attorneys' fees and costs or sanction Lee.

**¶23** Gutierrez requests we award her attorneys' fees and costs on appeal, which we decline to do. Gutierrez also requests that we sanction Lee, which we decline to do. *See* ARCAP 25.

### CONCLUSION

**¶24** We hold that the superior court did not err in relying on Lee's unadmitted expert report. We also affirm the superior court's finding that the cursive signature was not made by Richard. But we vacate the court's finding that Richard died intestate, and remand the case for the superior court to determine whether Richard intended for the handwritten block-letter name to serve as his signature finalizing the Document as a valid will.

