932 P.2d 1340

**Andrew T. LEAVY, a single man, Plaintiff–Appellant,**

v.

**Gary R. PARSELL and Jane Doe Parsell, husband and wife; Schendel Pest Control of Arizona, Inc., Defendants–Appellees.**

**No. CV–96–0265–PR.**

Supreme Court of Arizona, En Banc.

March 6, 1997.

Reconsideration Denied April 29, 1997.

Robbins Shumway & Foreman by G. Lynn Shumway, Phoenix, for Plaintiff–Appellant.

Struckmeyer and Wilson by William G. Caravetta, III, Phoenix, for Defendants–Appellees.

## OPINION

FELDMAN, Justice.

Andrew Leavy sought review of a court of appeals' decision affirming the trial court's order denying his motions for new trial. *See Leavy v. Parsell,* No. 1 CA–CV 95–0234, filed March 12, 1996 (Memorandum Decision). We granted review to determine whether the trial judge abused her discretion in failing to grant Leavy's motions for new trial on grounds that defense counsel engaged in deliberate, serious misconduct. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz. R. Civ.App. P. 23, and A.R.S. § 12–120.24.

### FACTS AND PROCEDURAL HISTORY

On May 23, 1992, Plaintiff Andrew Leavy ("Leavy") and Defendant Gary Parsell ("Parsell") were involved in an automobile collision at the intersection of 90th Street and Cactus Road in Scottsdale. At the time of the accident, Parsell was driving a company vehicle and was performing his duties as an employee of Defendant Schendel Pest Control of Arizona. Leavy brought a personal injury action against Parsell and Schendel, seeking damages based on negligence and respondeat superior theories.

Prior to trial, Leavy filed motions in limine seeking among other things to preclude Parsell from raising the seat belt defense and from introducing opinion testimony by Parsell's expert, Michael Broughton, regarding the credibility of certain accident witnesses,

especially Denise Ott–McLarty, on whose observations Broughton relied in reaching his conclusions. The judge granted these motions, stating:

IT IS ORDERED Mr. Broughton cannot testify regarding the credibility of witnesses, but he can indicate which witnesses' statements and testimony he relied on as the facts upon which his opinion is based.

\* \* \* \* \* \* \* \*

IT IS ORDERED precluding the defendants from "raising" the seatbelt defense.

Leavy admitted prior to trial that a bottle of whiskey found near the accident site was his, but there was no evidence that Leavy used any alcohol prior to the accident or was impaired to any extent. We cannot tell from the record before us whether the judge ordered that the issue of alcohol use not be raised or whether counsel agreed not to raise it, but it is clear it was not an issue to be tried.

During his opening statement, defense counsel twice violated the judge's orders by telling the jury that: (1) the emergency room records stated Leavy was "a probable unrestrained driver," and (2) Ott–McLarty was described by an accident reconstruction expert as one of the best witnesses he had ever seen in sixteen years. Later the same day, during cross-examination of another witness, counsel asked if Leavy was wearing a seat belt when found in the vehicle immediately after the accident. Leavy's counsel timely objected to the three improper comments and the objections were sustained. Believing the "bell had been rung" and not wishing to emphasize the matter, Leavy's counsel did not request the judge to instruct the jury to disregard defense counsel's statements. Instead, at the start of the second day of trial, Leavy moved for a mistrial based on defense counsel's violation of the judge's orders. The judge denied the motion because she could not recall the comments made during opening statement.

The parties presented conflicting evidence about how the accident occurred. Oddly, both drivers had been driving nearly identical, white, foreign-made, pickup trucks. According to Leavy, he was traveling westbound on Cactus Road, and Parsell was driving southbound on 90th Street and ran the stop sign, causing the accident. Parsell had retrograde amnesia, but the version from the defense eye-witnesses, especially Ott–McLarty, was that Parsell was driving eastbound on Cactus Road and it was Leavy, traveling southbound on 90th Street, who ran the stop sign and caused the collision.

The jury returned a unanimous defense verdict. Leavy timely filed a motion for new trial, arguing that defense counsel's improper references to Leavy's use or non-use of a seat belt and vouching for Ott–McLarty's credibility denied him a fair trial. At the hearing on the motion, the judge stated that defense counsel "clearly violated the motion in limini [sic]," and that he did so "with malice aforethought." According to Leavy's counsel, jurors commented that they "saw the case as one that was 50/50" and "[e]xactly even." The judge agreed with this assessment, adding, however, that she did not "see how anybody could get that extra 1 percent that's necessary" to tip the balance in favor of one party over the other.

Leavy then amended his motion to include defense counsel's repeated references to alcohol: by our count, counsel mentioned the whiskey bottle or Leavy's possible use of alcohol prior to the accident on at least *eleven* occasions. The judge nevertheless denied both motions, noting in her order that there was no testimony about Leavy's use of a seat belt because all objections to those questions were sustained. She agreed that defense counsel improperly asked many questions about Leavy's use of alcohol and mentioned in his opening statement and during examination matters excluded by pretrial orders. She concluded, however, that

the misconduct violated the spirit and intent of the orders. The issue is whether the misconduct materially affected the plaintiff's rights.... The court is unable to find that the misconduct materially affected plaintiff's rights.

The court of appeals affirmed, holding that although defense counsel's statements "cer-

tainly had the potential to deprive Leavy of a fair trial," the trial judge did not abuse her discretion in denying the motions for new trial. *Leavy,* mem. dec. at 9–10. We conclude the potential was realized and defense counsel's misconduct deprived Leavy of a fair trial.

## DISCUSSION

### A. *Grant v. Arizona Public Service Co.*

■ The grant or denial of a motion for new trial on grounds of misconduct is a matter within the trial judge's discretion. In exercising that discretion, the judge must decide whether the misconduct materially affected the rights of the aggrieved party. *Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 454, 652 P.2d 507, 527 (1982). Reversal will be required only when it appears probable that the misconduct "actually influenced the verdict." *Id.* (quoting *Sanchez v. Stremel,* 95 Ariz. 392, 395, 391 P.2d 557, 559 (1964)). Because this is a factual determination, no presumption of prejudice or lack of prejudice should be applied. If the misconduct is serious, however, the judge should resolve any doubt in favor of the party aggrieved. *Id.* at 455, 652 P.2d at 528 (citing *Sadler v. Arizona Flour Mills Co.,* 58 Ariz. 486, 121 P.2d 412 (1942)).

■ The judge did not do so in this case, denying the motions for new trial even though she recognized that the case was very close. She must also have recognized that under the peculiar facts of this case, the credibility and accuracy of the witnesses for each side were the keys to the jury's verdict. We are mindful that in *Grant* we said:

> We are left here with a case in which the record could justify either a conclusion of prejudice or no prejudice. . . . Thus, . . . if the trial court had granted a new trial, we would have no hesitancy in affirming. On the other hand, since the record also supports the contrary finding, we must affirm the order denying a new trial, *unless some reason exists for departing from the usual rule.*

*Id.* at 456–57, 652 P.2d at 529–30 (emphasis added).

In *Grant,* a wrongful death case, during final argument plaintiff's counsel drew improper inferences from the admitted evidence. These comments were made primarily to support plaintiff's claim for punitive damages. Counsel also speculated on facts that were not only irrelevant but not in evidence, suggesting that the victim's widow was not dating and had no plans to remarry. Counsel also peppered his closing remarks with improper personal views and comments. We found that the trial judge had not erred in denying the motions for mistrial and for a new trial.

Various factors distinguish this case from *Grant.* First, the misconduct in this case was much more egregious than in *Grant.* Counsel deliberately and knowingly did what the judge expressly ordered him not to do. This was not a case of a lawyer getting carried away and injecting improper issues or comments in final argument. Such misconduct occurs, improper though it may be. Instead, with what the judge accurately called "malice aforethought," counsel deliberately and knowingly violated the judge's orders on the motions in limine.[1] Second, one of the improper remarks was directly relevant to the issue of witness credibility, the essential issue in this case of diametrically conflicting stories. In *Grant,* on the other hand, the main purpose of counsel's improper argument was to procure punitive damages. If the jury had awarded punitive damages, "we would have no hesitation in concluding that the misconduct probably influenced the jury." *Id.* at 453, 652 P.2d at 526.

In the present case, defense counsel sought to tip the scales in his client's favor by implying Leavy was negligent by failing to use his seat belt and by possessing or using alcohol; counsel also sought to bolster the credibility of a key defense witness on the issue of liability. We believe that because the evidence was quite evenly divided between the parties, defense counsel's deliberate and knowing acts of misconduct

---

1. We believe the judge's pretrial orders were quite clear, despite appellate counsel's statement, during argument to this court, that they were ambiguous. We agree with the judge's finding that trial counsel's conduct was knowing and intentional.

throughout the trial, some of which violated explicit, unambiguous court orders, may well have produced the very result sought.

How, then, should a trial judge resolve a close question of prejudice in deciding whether counsel's acts probably influenced the jury?

## B. Prejudice

■ If the law in civil cases requires that a litigant subjected to misconduct of the type presented in this case make an explicit showing of probable influence, then the rule is self-defeating. As we have recently recognized in other, similar contexts, it is impossible for a party to carry the burden of proving prejudice when the misconduct or error prevents the court from determining the exact extent of prejudice. *See Perez v. Community Hospital of Chandler,* 929 P.2d 1303, 234 Ariz.Adv.Rep. 3 (1997) (bailiff misconduct in misleading the jurors by giving incorrect answers to their questions without relaying the questions to the trial judge); *State v. Rich,* 184 Ariz. 179, 907 P.2d 1382 (1995) (trial judge failed to notify counsel that jury returned inconsistent guilty verdict on lesser included offense). In these cases, we held that prejudice will be found when there has been significant misconduct affecting the essential rights of a litigant and when the very nature of the misconduct makes it impossible to determine the extent of prejudice. 929 P.2d 1303, 234 Ariz.Adv.Rep. at 5–6; *Rich,* 184 Ariz. at 181, 907 P.2d at 1384; *see also State v. Dickens,* 187 Ariz. 1, 15, 926 P.2d 468, 482 (1996) (jurors cannot be interrogated to inquire into their mental processes).

■ We adopt that rule for this situation. Any other result would encourage deliberate, unethical conduct by giving lawyers carte blanche to violate professional standards and court orders with relative impunity. We preserve the rules that misconduct alone will not warrant a new trial and that the grant or denial of a new trial based on misconduct is within the judge's discretion. *Grant,* 133 Ariz. at 454, 652 P.2d at 527; *see also Zugsmith v. Mullins,* 86 Ariz. 236, 238, 344 P.2d 739, 741 (1959). But the trial judge should find prejudice when, as in the present case, (1) the misconduct is significant, especially if the record establishes knowing, deliberate violations of rules or court orders that a litigant may confidently expect to be observed by his or her adversary; (2) the misconduct is prejudicial in nature because it involves essential and important issues, but the extent is impossible to determine in a close case; and (3) the misconduct is apparently successful in achieving its goals. In cases in which these factors are present, prejudice should be inferred, absent an affirmative showing to the contrary by the guilty party.

The court of appeals believed that any possibility of prejudice was overcome because the trial judge sustained Leavy's objections and instructed the jurors that counsel's arguments and questions were not evidence. We disagree with this reasoning. Although the judge's rulings on Leavy's objections prevented an extended discussion of the issues or answers to improper questions, the comments in opening statement and the later improper questions raised issues that were legally irrelevant but might have been considered important by the jurors. Further, we cannot adopt a rule that essentially allows lawyers freedom to knowingly and deliberately raise inadmissible and inflammatory matters during opening statements on the bare assumption that any harm will be cured by a later stock instruction that arguments and questions are not evidence. This result is neither desirable nor, we believe, pragmatically correct. We cannot presume that stock instructions will cure the introduction of excluded issues such as alcohol use, seat belt use, and one witness' opinion of another.

## C. Unprofessional Conduct

■ We make no finding of *unethical* conduct. Lawyers are "entitled to be heard before being branded as unethical practitioners." *Grant,* 133 Ariz. at 457, 652 P.2d at 530. But certainly our courts can recognize and take action when *unprofessional* conduct occurs in the course of litigation. Judges need not and should not permit unseemly conduct simply because it may not go far enough to warrant imposition of disciplinary sanctions. To be silent in the face of unprofessional conduct is ultimately to encourage

74

it. It is our experience that judges get what they demand from lawyers, and our courts have an obligation to demand and thus promote proper conduct by the bar. This court has been disturbed by a growing trend in unprofessional conduct in and out of the courtroom. Many distinguished and reputable members of the bar share this feeling. All of us, judges, lawyers, and their several associations, must work together to promote professionalism.

We hope this opinion, like those in *State v. Killean*, 185 Ariz. 270, 915 P.2d 1225 (1996) (preclusion of evidence appropriate sanction for defense counsel's willful misconduct in failing to disclose that evidence), and *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984) (jeopardy attached and retrial barred because prosecutor engaged in intentional, egregious, and improper conduct), is one more step in informing the public and the bar that this court will not tolerate unprofessional behavior.

Given the circumstances and facts set forth in this opinion and the trial judge's conclusion, supported by ample evidence, that counsel's conduct was both deliberate and knowing, we believe at least a *prima facie* case of unprofessional conduct exists. Our trial judges should not tolerate deliberate professional misconduct. At the hearing on the motion for new trial in this case, the judge said that if defense counsel ever again violated one of her orders, either in fact or in spirit, she would "take it out of his pocketbook." But when faced with counsel's deliberate, knowing misconduct, a trial judge should not wait until the next time. Prompt action may prevent misconduct the next time.

## CONCLUSION

For the foregoing reasons, we vacate the court of appeals' memorandum decision and the trial judge's order and remand this case to the superior court with instructions to grant a new trial. The clerk of this court is also instructed to forward a copy of this opinion to the disciplinary department of the State Bar of Arizona.

ZLAKET, C.J., JONES, Vice Chief Justice and MOELLER and MARTONE, JJ., concur.