NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRANK LUYET, et al., *Plaintiffs/Appellees*,

*v.*

MARIPOSA LANDSCAPE ARIZONA, INC., et al., *Defendants/Appellees*.

and

STATE OF ARIZONA, *Defendant/Appellant*.

No. 1 CA-CV 21-0543
FILED 11-10-2022

Appeal from the Superior Court in Maricopa County
No.  CV2017-014464
The Honorable Roger E. Brodman, Judge *Retired*

**AFFIRMED**

COUNSEL

Matthew P. Millea PLC, Scottsdale
By Matthew P. Millea
*Co-Counsel for Plaintiffs/Appellees Frank Luyet and Jennifer Haggerty*

Mark J. DePasquale PC, Phoenix
By Mark J. DePasquale
*Co-Counsel for Plaintiffs/Appellees Frank Luyet and Jennifer Haggerty*

Hinshaw & Culbertson LLP, Phoenix
By Randy Aoyama, Bradley L. Dunn, Megha Singh
*Counsel for Defendant/Appellee Mariposa Landscape Arizona, Inc.*

Arizona Attorney General's Office, Phoenix
By G. Michael Tryon, Daniel P. Schaack, Rebecca Banes
*Counsel for Defendant/Appellant State of Arizona*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, Barbara J. Stansil
*Co-Counsel for Defendant/Appellee City of Peoria*

City of Peoria, Peoria
By Melinda A. Bird
*Co-Counsel for Defendant/Appellee City of Peoria*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann joined.

---

**P A T O N**, Judge:

¶1 The State of Arizona appeals from the superior court's order granting a motion for a new trial. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In Peoria, a stretch of Grand Avenue/U.S. Route 60 passes between an RV park and industrial buildings on its way northwest before reaching downtown Peoria. This roadway has no streetlights or sidewalks after it passes through a six-way intersection with North 75th Avenue and Olive Avenue except for some foliage and gravel along the sides of the road. No signs prohibit pedestrian traffic, and no fences keep pedestrians out. On this road, a vehicle struck and killed Gavin Haggerty ("Gavin"), a few hours before dawn in November 2016.

¶3 Gavin's parents (Frank Luyet and Jennifer Haggerty, collectively "the Luyets") sued the State, the City of Peoria, and the street maintenance provider for their alleged negligence in constructing and maintaining this stretch of roadway. The Luyets argued that the roadway

was unreasonably dangerous for pedestrians, as it possessed neither the safety features necessary to walk along its sides, nor warnings that pedestrians should keep out.

¶4        The State has an affirmative defense to actions such as this alleging negligent roadway design. *See* A.R.S. § 12-820.03(A). To prove the affirmative defense, the State must establish that the road's plan or design was "prepared in conformance with generally accepted engineering or design standards." *Id.* Defendants must also prove that they gave the public "a reasonably adequate warning of any unreasonably dangerous hazards." *Id.* Because a genuine issue of material fact existed as to whether Defendants met this burden, Defendants moved to bifurcate the trial. A.R.S. § 12-820.03(B).

¶5        The superior court granted the motion, ordering that "the only issue [for the first trial] will be whether the [government defendants] were negligent and whether the affirmative defense under A.R.S. § 12-820.03 applies. The Court does not intend to address causation, comparative fault or damages at the first trial." Prior to trial, the Luyets filed motions in limine, asking the court to preclude unfairly prejudicial or irrelevant evidence—including Gavin's state of intoxication and the issue of causation. The superior court granted the Luyets' motion, noting that "[w]hether [Gavin] was intoxicated is not a relevant inquiry into whether the design was negligent. The information is clearly more prejudicial than probative."

¶6        During its opening statement, the State said:

> [W]hat this case is ultimately about, digging deep through all the engineering guidelines, recommendations, references manuals, what this case is really all about is whether the State is responsible for people who stand in the street on Grand Avenue at 4:40 a.m. in the morning in the dark in that industrial area and get hit by oncoming traffic. What this case is about is whether people should be expected to take perfectly good care of themselves when there's no sidewalk in an industrial area where there's clearly no lighting that anyone looking at would be able to tell or whether the State should be required to serve as a nanny state and protect perfectly functional adults from themselves.

Counsel for the Luyets did not contemporaneously object to the State's opening statement.

¶7 After a three-day trial, the jury found the State was not negligent by a 6-3 vote. After the verdict, the Luyets filed a motion for a new trial under Arizona Rule of Civil Procedure 59, arguing the State deliberately violated the court's order in limine in its opening statement, that the prejudicial effect of the violation was impossible to determine, and that the violation was apparently successful in achieving its goal of a defense verdict. *See Leavy v. Parsell*, 188 Ariz. 69, 73 (1997).

¶8 The superior court granted the motion. The court noted that it was the State, not the Luyets, who requested the bifurcated trial. The court reviewed its grant of the motion in limine and discussion of the motion at the Final Trial Management Conference and found that the State should have been aware that "causation and comparative fault were not at issue at this mini-trial." The court found that the State's argument injected at least five irrelevant issues into the trial:

> 1) that the accident occurred at 4:40 a.m. on a Saturday morning; 2) that the decedent was standing in the street; 3) that the decedent was a "functional" adult; 4) that the decedent was hit by a driver going to work and 5) raising the issue of the decedent's comparative fault by suggesting the decedent failed to take care of himself.

¶9 But the court also noted that the Luyets did not immediately object to these statements or seek a curative instruction. The court noted that it first sua sponte raised the issue of whether the opening statement violated the order in limine at a subsequent bench conference but the Luyets still did not propose a curative instruction or other remedy at that time.

¶10 Nonetheless, the court declined to apply the State's requested fundamental error standard of review, noting that in its estimation, "the fundamental error analysis fails to account for sanctions arising from intentional misconduct." The court suggested that a denial of the motion under these facts may "encourage attorneys to raise inadmissible and improper evidence during [an] opening statement, forcing opposing counsel to object." The court granted the motion in a signed order. The State timely appealed the order granting the new trial "and all rulings leading to that order."

## DISCUSSION

I. **The order granting a motion for a new trial is an appealable order.**

¶11 The Luyets argue that the order granting their Rule 59 motion is not an appealable order. They note that statutes outlining appellate jurisdiction have been interpreted "in favor of finality," citing our decision in *Maria v. Najera*, 222 Ariz. 306 (App. 2009), and some historical construction of the statute. We have an independent duty to determine whether we have jurisdiction over an appeal. *Bridgeman v. Certa*, 251 Ariz. 471, 473, ¶ 5 (App. 2021).

¶12 The State argues we have jurisdiction under the plain language of A.R.S. § 12-2101(A)(5)(a), which provides that "[a]n appeal may be taken . . . from an order . . . [g]ranting or refusing a new trial." We agree. We have previously granted review from motions denying or granting a motion for new trial that either do not reference a final judgment or where a final judgment has not been entered. *See Wells v. Tanner Bros. Contracting Co.*, 103 Ariz. 217, 219-220 (1968) ("It is quite clear that under [A.R.S. § 12-2101] an order granting a new trial is substantively an appealable order.").

¶13 The case law cited by the Luyets is also distinguishable. *Maria* concerned an appeal from the denial of a motion for a new trial after the entry of partial summary judgment against a plaintiff. 222 Ariz. at 307-08. An appeal from the denial of a motion for a new trial, filed after a grant of partial summary judgment without Rule 54(b) language, is not permissible because the underlying summary judgment is not appealable without finality language. *See Brumett v. MGA Home Healthcare, L.L.C,* 240 Ariz. 420, 430, n.10 (App. 2016); *see also* A.R.S. § 12-2101(A)(1). In other words, a litigant cannot apply a coat of Rule 59 paint on an otherwise unappealable interlocutory order to seek appellate review. But here, an order for a new trial—coming after the completion of a jury trial—is an appealable interlocutory order under the plain text of Section 12-2101(A)(5)(a). We have jurisdiction.

## II. The trial court did not abuse its discretion by granting the Luyets' motion for a new trial.

¶14 We review an order for a new trial under Rule 59 for an abuse of discretion. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 25, ¶ 5 (App. 2000); *see also Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 451 (1982) ("The granting or denial of a new trial on the grounds of misconduct of counsel is a matter within the trial court's discretion."). "We generally review an order granting a new trial more liberally than an order denying one." *Reyes v. Town of Gilbert*, 247 Ariz. 151, 157, ¶ 21 (App. 2019). Where a new trial is justified by any ground cited in the order, we will affirm the order. *Reeves v. Markle*, 119 Ariz. 159, 163 (1978). A new trial may be granted based on

the improper argument of counsel in violation of an order in limine. Ariz. R. Civ. P. 59(a)(1)(A), (B); *see also McRae v. Forren*, 5 Ariz.App. 465, 468 (1967).

**¶15** "[M]isconduct alone," however, "will not warrant a new trial . . . ." *Leavy v. Parsell*, 188 Ariz. 69, 73 (1997). The misconduct must "materially affect[] the rights of the aggrieved party." *Id.* at 72 (citing *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 454 (1982)). Prejudice should be found in a close case if:

> (1) [T]he misconduct is significant, especially if the record establishes knowing, deliberate violations of rules or court orders that a litigant may confidently expect to be observed by his or her adversary;
>
> (2) [T]he misconduct is prejudicial in nature because it involves essential and important issues, but the extent is impossible to determine in a close case; and
>
> (3) [T]he misconduct is apparently successful in achieving its goals.

*Leavy*, 188 Ariz. at 73. Here, the superior court found all three prongs were met. The court found that the State knowingly and deliberately violated court orders meant to limit the scope of the trial to whether the State negligently designed the roadway. Further, those orders were necessitated by the State's request to bifurcate the trial. The court found the statements were prejudicial and cited the closely divided verdict and jury's short deliberation as evidence of that prejudice. The court found the misconduct to be successful because the State prevailed at trial.

### A. The Luyets' failure to contemporaneously object did not preclude the court from ordering a new trial.

**¶16** The objection presented in a motion in limine is preserved when that motion is ruled upon. *State v. Anthony*, 218 Ariz. 439, 446 (2008). This is true even if the motion is granted. *State v. Coleman*, 122 Ariz. 99, 100-101 (1979) (holding it was unnecessary for defendant to renew objection after motion in limine was granted); *see also Liberatore v. Thompson*, 157 Ariz. 612 (App. 1988) (upholding the grant of a motion for a new trial based on the violation of an order in limine where counsel did not object until after counsel's arguments).

¶17 The State contends that the Luyets sat on their rights by failing to object during the State's opening statement and thereby waived any argument to the superior court. We agree with both the State and the superior court that it would have been a much better practice for the Luyets to object immediately after the State's attorney started his remarks in violation of the order in limine. But the State has provided us with no authority suggesting that, on this set of facts, the superior court abused its discretion by granting a motion for a new trial based on the State's violation of the limine order. *See Liberatore*, 157 Ariz. at 619 ("We know of no rule, nor would we adopt a rule, that a lawyer has insufficiently preserved an objection to improper argument by embodying the objection in a successful motion *in limine* in advance of argument.").

¶18 As we said in *Liberatore*, there is a difference between waiving an argument *on appeal* for failure to object and finding that the *superior court* abused its discretion by ordering a new trial after making a finding of misconduct. *Compare id.* at 619-20; with *State v. Lichon*, 163 Ariz. 186, 189 (App. 1989) (Defendant waived argument on appeal concerning violation of order in limine by the State); *Martinez v. Jordan*, 27 Ariz. App. 254, 256 (1976) (Plaintiff waived similar argument on appeal).

¶19 The case law cited by the State stands for the proposition that a party *may* waive an argument based on the violation of an order in limine. *See Lichon,* 163 Ariz. at 189. But a rule that the superior court does not abuse its discretion by denying such a motion does not necessitate that we find an abuse of discretion where it grants such a motion. While such a party fails to object at their hazard, we cannot say that a superior court abuses its discretion in weighing the delay against the seriousness of the violation.

¶20 Here, the Luyets filed a motion in limine specifically seeking to preclude evidence of Gavin's intoxication at the time of the accident. It also sought to preclude "evidence relevant only to causation, comparative fault or damages," in this first trial. The court granted the motion. The superior court did not abuse its discretion by granting a new trial based on the State's violation of this order in limine, even where the Luyets failed to contemporaneously object.

## B. The superior court did not abuse its discretion by finding the State violated the order in limine.

¶21 The State argues that it did not violate the court's order in limine. The State first points to portions of its opening statement that were cited in the motion for a new trial and alleges they were relevant to the

State's duty of care. We therefore must consider whether the State's argument was (1) relevant to the issues in the first trial and (2) whether it violated the granted motion in limine.

¶22            In its order bifurcating the two trials, the court stated that:

> If the trials are bifurcated, the only issue at the first trial will be whether the governmental entities were negligent and whether the affirmative defense under A.R.S. § 12-820.03 applies. *The Court does not intend to address causation, comparative fault or damages at the first trial.* The Court does not believe the issues of the governmental entities' negligence and the affirmative defense can be logically separated, so it makes sense to try the issues at the same time . . . . Some of the governmental entities' conduct may, of course, still be relevant at the second trial, because the governmental entities' conduct may be relevant to a determination of comparative fault.

(Emphasis added). Put another way, while the term negligence refers to the four elements of a duty of care, the breach of that duty, causation of an injury, and damages, the court was putting off the latter two elements for the second trial. *See Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81, ¶ 5 (2022). The issue for the first trial was whether Defendants breached their duty of care in designing this segment of roadway.

¶23            We next consider the language of the court in its minute entry granting the motion in limine:

> The motion is granted. Whether plaintiff's decedent was intoxicated is not a relevant inquiry into whether the design was negligent. The information is clearly more prejudicial than probative.

But while the order referred to the alleged intoxication, the granted motion was broader, asking the court to exclude "evidence relevant only to causation, comparative fault or damages" as irrelevant under Arizona Rule of Evidence 401. The discussion in the motion included evidence that Gavin was intoxicated at the time of the accident, but also included disputes over where Gavin was located and whether he was moving at the time of the accident. We do not read the court's minute entry as only precluding the intoxication evidence. The motion was granted as to all evidence relevant to causation and comparative fault—not granted in part. The court stated

8

that the evidence was precluded for being irrelevant to "whether *the design* was negligent." (Emphasis added).

¶24        Finally, we turn to the discussion held at the Final Pretrial Management Conference. There, the court stated that, in addition to Gavin's alleged intoxication having no relevance to the phase-one trial, "[t]his [trial] regard[s] negligence and standard of care . . . [a]gain, looking at it from the other side, the whole purpose of this statute is just to put this [planning] decision into a vacuum." The court noted that the identity of the victim, his intoxicated state, and where the victim was going, were "not relevant to the issue of negligent design."

¶25        The superior court was correct in finding that its order in limine had been violated. The order, by granting the motion in its entirety, precluded evidence concerning anything other than the government entities' duty and breach in the first trial. As the court aptly summarized, the State's opening statement introduced as many as five issues precluded under the order. The court's comments on the record and written rulings should have put the State on notice as to the boundaries of the trial, and, as the superior court pointed out, at no point did the State request to clarify the court's rulings. The court did not abuse its discretion in making this finding.

## C. The superior court did not abuse its discretion by finding the State's improper argument prejudiced the Luyets.

¶26        We will affirm the grant of a motion for a new trial if evidence in the record supports a finding of prejudice. *Leavy*, 188 Ariz. at 72 (quoting *Grant*, 133 Ariz. at 456-57). We examine each three *Leavy* factors in turn.

### 1. The State's misconduct was significant.

¶27        The first *Leavy* factor is whether the misconduct was significant. As the superior court noted, it was the State who requested a bifurcated trial. The State had ample opportunity to seek clarification of orders in limine that limited the evidence at issue and knew or should have known that causation and comparative fault were not at issue. Consequently, violation of the minute entry was willful and knowing, *i.e.*, significant. *Id.* at 73.

¶28        The State argues that because some of the five objectionable statements could have been guessed at by the jury through evidence introduced by both sides, the misconduct was not significant. We disagree.

¶29 Further, the examples of purported introduction of irrelevant evidence by the Luyets the State provides are inapposite. The first example the State gives is a stipulated statement read by the court, contending that it too introduced irrelevant issues. But the statement read by the court, even if it allowed the jurors to *guess* at irrelevant issues, on its own terms *highlighted* what the focus of the trial was:

> This case arises out of a collision between a pickup truck and a pedestrian on November 19, 2016. Plaintiffs Frank Luyet and Jennifer Haggerty claim that the State of Arizona negligently designed Grand Avenue because no sidewalk was constructed between 75th Avenue and 83rd Avenue on Grand Avenue. Plaintiffs claim that the standard of care required the State of Arizona to include a sidewalk as part of the design. In the alternative if a sidewalk was not to be constructed, the Plaintiffs claim that the State was negligent for failing to post a No Pedestrian sign at the [end of] the sidewalk at 75th Avenue.
>
> The State of Arizona responds that Grand Avenue was reasonably safe and conformed to the appropriate engineering and design standards of care without a sidewalk. The State also denies that any additional signage, barriers, or lighting were necessary or appropriate or that an unreasonably dangerous hazard existed at the time of the collision that required some kind of warning to allow the public to take suitable precautions.

This is not what the State did in its opening. Unlike the stipulated statement, the State's opening did not merely reinforce the premise that this mini-trial was about the State's obligation to conform to engineering and design standards. The State's opening statement discussed allegations that were appropriate only in the context of comparative fault. Indeed, the State told the jurors that the case was "really all about" issues relating to comparative fault and causation that the superior court declared off limits, rather than the issue of design.

¶30 The State points to testimony concerning the existence or nonexistence of lighting and the use of shrubbery in landscaping. Again, these are design features properly within the ambit of a trial on engineering and design standards. The State also points to testimony that traffic engineers expect pedestrians to "follow certain traffic laws" and not behave recklessly. While this testimony might also have been useful in a

comparative fault context, we cannot say the superior court abused its discretion in distinguishing between this testimony—which was also relevant to design standards—and the State's opening argument.

¶31 The State also argues that the Luyets' discussion of the objectionable opening in the Luyets' closing renders the State's error harmless. As the Luyets point out, we have previously rejected this argument. *State v. Keeley*, 178 Ariz. 233, 236 (App. 1994) (rejecting State's argument that Defendant's attempt to address State's improper commentary on invocation of right to remain silent became harmless after Defendant's counsel asked a few questions "to try to minimize the damage"). At closing, the Luyets' counsel, after reminding the jury that what "caused this collision" was not relevant, brought up the State's objectionable opening in an attempt to correct any misapprehension as to the issue at trial. This was permissible.

### 2. The misconduct involved important issues because it drew the jury's attention to issues reserved for the second trial.

¶32 The second *Leavy* factor is whether the "misconduct is prejudicial in nature because it involves essential and important issues." 188 Ariz. at 73. Focusing the jury on the State's affirmative defense—that the roadway was built in accordance with applicable standards of engineering and design—was the purpose of bifurcating the trial. By contrast, the State's opening remarks invited the jury to weigh the responsibility of a "functional adult" against the State's duty. On this record, we cannot say the superior court abused its discretion.

### 3. The misconduct was apparently successful in achieving its goals.

¶33 The final *Leavy* factor is whether the misconduct "was apparently successful." 188 Ariz. at 73. In weighing this factor, the superior court considered (1) that the State (who engaged in the purported misconduct) won, (2) by a narrow margin (6-3), (3) after relatively little deliberation. We further note that, as in *Leavy*, both sides produced a significant amount of technical information for the jury to consider. The State's narrow victory after a short deliberation despite the volume of evidence to weigh supports a reasonable inference that the State succeeded based on its misconduct. *See Leavy*, 188 Ariz. at 73; *see also Kirby v. Rosell*, 133 Ariz. 42, 45-46 (App. 1982) (rejecting argument that "proof of actual prejudice" is required for court to grant motion for a new trial). Again, even

if we disagreed with the superior court, we cannot find an abuse of discretion on this record. *See Englert*, 199 Ariz. at 25 ("We review an order granting a new trial under a more liberal standard than an order denying one.") (citation omitted).

**CONCLUSION**

¶34            We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA