NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TODD BOROWSKY, *Plaintiff/Appellant,*

*v.*

MARK BROOKS, et al., *Defendants/Appellees.*

No. 1 CA-CV 23-0699
FILED 12-19-2024

Appeal from the Superior Court in Maricopa County
No. CV2018-015307
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik
*Counsel for Plaintiff/Appellant*

Simbro & Stanley, PLC, Scottsdale
By Edwin B. Stanley
*Counsel for Defendant/Appellee Mark Brooks*

Tiffany & Bosco, P.A., Phoenix
By William M. Fischbach, Stephen C. Biggs, Mitchell S. Antalis
*Counsel for Defendant/Appellee Mackenzie Pate*

Moyes Sellers & Hendricks, Phoenix
By Keith L. Hendricks, Lawrence Palles
*Counsel for Defendant/Appellee Robert Johnson*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge David B. Gass and Judge Jennifer M. Perkins joined.

_____

**T H U M M A**, Judge:

¶1        Plaintiff Todd Borowsky appeals the grant of a motion for new trial for defendants Mark Brooks, Robert Johnson and Mackenzie Pate (Defendants), and imposing attorneys' fees as sanctions, based on Borowsky's trial misconduct. Borowsky claims his conduct does not satisfy the standard for a new trial, meaning the sanctions also must be reversed. Because Borowsky has shown no error, the new trial order and sanctions are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2        This case arises out of four loans Brooks made to Borowsky totaling $200,000. In a May 2016 loan, Borowsky received $100,000, posting as security a 2005 Lamborghini Gallardo and a bulletproof 2007 GMC Denali. In an August 2016 loan, Borowsky received $40,000, posting as security a 1971 Chevelle convertible. Both loans were evidenced by a one-page form "Installment Loan Security Agreement" with an integration clause. The loans charged 48 and 36 percent annual rates of interest, were for a one-year term and were signed by Brooks and Borowsky.

¶3        In August 2016, Borowsky received an additional $50,000, posting as security a specified liquor license. This $50,000 loan was evidenced by a three-page Promissory Note, with an integration clause and was for one year at 48 percent. A July 2017 one-page "Addendum to Promissory Note" increased the $50,000 loan by $10,000. That addendum cross-collateralized the previous loans and repeated a 48 percent interest rate.

¶4            In February 2018, after a dispute arose about Borowsky repaying the loans, Brooks apparently took possession of the collateral and demanded payment. Brooks apparently sold the vehicles and, ten months later, Borowsky filed this case, alleging various contract, tort and statutory claims against Defendants and others.

¶5            During four years of pretrial proceedings, the superior court considered and ruled on various pretrial motions, some of which resolved some of Borowsky's claims, including his claims against others. The court denied motions for summary judgment by Borowsky and Defendants. The court also granted motions in limine precluding trial evidence of or inquiry into: (1) Brooks' felony convictions from 1999; (2) "areas covered by a previously-issued protective order, including Millennium Banc LTD, National Lending Group" and Auto Title Loans USA; (3) "any person unknown to Borowsky to whom Brooks has lent money;" (4) "any pawn shops in which Brooks may have an interest or some connection;" (5) "Johnson's prior business, disputes, and litigation between Johnson and Brooks" and (6) "Johnson's alleged participation in the subject loans or a RICO conspiracy."

¶6            Following these rulings, the court held a 13-day jury trial in October and November 2022 on Borowsky's claims and Defendants' counterclaims. During trial, Borowsky repeatedly violated the court's pretrial orders, including volunteering references to Brooks' prior felony conviction; conspiracies of Brooks' and Johnson's unrelated joint business activities and Johnson's unrelated business activities and his alleged involvement in the loans, Millenium Banc LLC and Auto Title Loans USA. Despite repeated warnings by the court, Borowsky continued to introduce testimony and refer to evidence the court had precluded in its pretrial rulings.

¶7            Outside the presence of the jury, the court then addressed the issue with the parties. Johnson's counsel noted the court's pretrial orders were "crystal clear" and Borowsky had violated the orders "about six different ways in ten minutes" during his direct examination. The court asked Borowsky's counsel if Borowsky was aware of the evidence that was precluded from trial. The court then addressed Borowsky directly: "I know you have a story or narrative that you want to convey, but you have to do that within the confines of the court's rulings." Borowsky responded that he understood but claimed to lack knowledge that he was violating the court's orders. After an extended discussion, the court admonished Borowsky directly and allowed his attorney to use leading questions in an attempt to avoid additional violations of the court's pretrial rulings.

**¶8**        Despite these efforts, Borowsky continued to repeatedly refuse to abide by the court's directives. Borowsky then sought to avoid answering questions during cross-examination, prompting the court to repeatedly admonish him and strike non-responsive and prejudicial answers dozens of times. Borowsky then tried to address the jury and control questions during his testimony, despite the court directing he was not allowed to do so. Throughout the 13-day trial, the court repeatedly admonished Borowsky all six days he testified as well as other times.

**¶9**        During direct examination of Brooks, counsel advised the court — without mentioning Borowsky by name — that "someone in the courtroom is waving their hands, kicking their head back" in apparent response to testimony. In response to Borowsky's behavior, the court "direct[ed] everybody in the courtroom not to be reacting to testimony as it's given" and admonished that if it continued to happen the court "will have any offending party removed." Again, however, Borowsky refused to comply with the court's orders. Instead, he was heard snickering and snorting and laughing during Brooks' testimony such that the court directed Borowsky to control himself, warning that he would be removed from the courtroom if he failed to do so.

**¶10**        Given Borowsky's actions during trial, the court gave the following curative instruction to the jury:

> Mr. Todd Borowsky testified about various things the court has ruled cannot be admitted or considered by the jury because they are either irrelevant to the issues before you or for some other reason are inadmissible. Mr. Borowsky was previously directed not to testify as to those things and knowingly violated that directive. The court struck that testimony and instructed you not to consider those things. To reiterate, you're instructed to give no weight to that testimony in assessing any claim or contested fact or in assessing the credibility of any witness in this lawsuit. You are to assume there's no evidence or factual basis to support such statements and not speculate about the same.

**¶11**        At the close of Borowsky's case, Brooks and Pate moved for judgment as a matter of law on all counts. The court granted the judgment as a matter of law for an invasion of privacy count but denied it for all other

4

counts. Although the four loans in dispute totaled $200,000, after deliberating, the jury awarded Borowsky compensatory damages of $6,216,000 against Brooks, $4,875,000 against Johnson and $200,000 against Pate. The jury awarded Borowsky $5,000,000 in punitive damages against Brooks and $2,500,000 in punitive damages against Johnson.

¶12　　　　Brooks and Pate then renewed their motions for judgment as a matter of law and Defendants all moved for a new trial. Denying the motions for judgment as a matter of law, the court granted Defendants' motion for new trial based on Borowsky's misconduct during trial. In a 20-page minute entry, the court discussed the legal standard in Arizona for granting a motion for new trial based on trial misconduct and summarized Borowsky's repeated trial misconduct. The superior court found it was proper to infer resulting prejudice and concluded that a new trial as to all claims and counterclaims was the proper remedy. As an additional sanction, the court awarded Defendants attorneys' fees incurred during trial totaling more than $230,000.

¶13　　　　This court has jurisdiction over Borowsky's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-201.21(A)(1) and –2101(A)(5)(a)(2024).[1]

## DISCUSSION

¶14　　　　"The grant or denial of a motion for new trial on grounds of misconduct is a matter within the trial judge's discretion." *Leavy v. Parsell*, 188 Ariz. 69, 72 (1997). This court reviews a ruling on a motion for new trial for an abuse of discretion, "given the record and circumstances of the case." *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996) (citation omitted); *accord State v. Fischer*, 242 Ariz. 44, 48–51 ¶¶ 11–25 (2017) (discussing broad discretion afforded to a trial court in addressing a motion for new trial in criminal and civil cases).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. The court directed the parties to provide supplemental briefing addressing jurisdiction, which confirms this court has appellate jurisdiction. *See Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 430 ¶ 19 (App. 2016) ("compliance with Rule 54(b) or 54(c) is not required for [appellate jurisdiction over] the rulings specified in A.R.S. § 12-2101(A) . . . (5)(a).").

I.      **Borowsky Has Not Shown the Superior Court Erred in Granting Defendants' Motion for New Trial.**

      A.      **Arizona Legal Standards for Granting a New Trial Based on Trial Misconduct.**

**¶15**      When exercising its discretion in ruling on a motion for new trial based on trial misconduct, "the judge must decide whether the misconduct materially affected the rights of the aggrieved party." *Leavy*, 188 Ariz. at 72 (citing cases). A new trial is "*required* only when it appears probable that the misconduct 'actually influenced the verdict.'" *Id.* (emphasis added; citing cases); *accord Ring v. Taylor*, 141 Ariz. 56, 60–61 (App. 1984). Although prejudice is not presumed, "[i]f the misconduct is serious, . . . the judge should resolve any doubt in favor of the party aggrieved." *Leavy*, 188 Ariz. at 72 (citing cases).

**¶16**      Appellate review of the grant of a motion for new trial is limited.

> When an appellate court reviews an order granting a new trial for abuse of discretion, it "look[s] to the broad scope of the trial and do[es] not attempt to reweigh the facts." The appellate court's role is to oversee the granting of new trials and to ensure that the exercise of a trial court's broad discretion has a legal, rather than an arbitrary, basis. The reviewing court must "inquire whether substantial evidence exists to support the trial court's determination." If such evidence exists, then the order is within the sound discretion of the trial court and should be affirmed.

*Fischer*, 242 Ariz. at 51 ¶ 26 (citations omitted). Because the trial judge here observed the trial misconduct, and because trial judges "disfavor new trial motions and will generally grant them only with great caution," *Liberatore v. Thompson*, 157 Ariz. 612, 620 (App. 1988) (citations omitted), this court reviews the grant of a motion for new trial "under a more liberal standard than an order denying one," *Englert v. Carondelet Health Network*, 199 Ariz. 21, 25 ¶ 5 (App. 2000) (citation omitted). Because "the trial judge who tried the case and who personally observed the proceedings" ruled on the motion, *see Fischer*, 242 Ariz. at 50 ¶ 21, this court will not reverse a new trial

order based on trial misconduct "absent a clear showing of prejudicial error," *Ring,* 141 Ariz. at 61 (citations omitted).

¶17 Assessing prejudice resulting from trial misconduct is context dependent and turns on the nature of the misconduct. Sometimes resulting prejudice from trial misconduct is obvious from the cold record on appeal, but sometimes it is not. Consistent with the deference owed to the trial judge, "prejudice will be found when there has been significant misconduct affecting the essential rights of a litigant and when the very nature of the misconduct makes it impossible to determine the extent of prejudice." *Leavy*, 188 Ariz. at 73 (citations omitted).

> The trial judge should find prejudice when . . . (1) the misconduct is significant, especially if the record establishes knowing, deliberate violations of rules or court orders that a litigant may confidently expect to be observed by his or her adversary; (2) the misconduct is prejudicial in nature because it involves essential and important issues, but the extent is impossible to determine in a close case; and (3) the misconduct is apparently successful in achieving its goals. In cases in which these factors are present, prejudice should be inferred, absent an affirmative showing to the contrary by the guilty party.

*Id*. With this background, the court addresses Borowsky's arguments.

### B.    The Superior Court Properly Set Forth the Applicable Legal Standards for Considering Whether to Grant a Motion for New Trial Based on Trial Misconduct.

¶18 Borowsky argues *Leavy* applies to "repeated, knowing, deliberate misconduct by counsel." Borowsky argues that *Leavy* does not apply to witness conduct, or in the alternative, it must be applied "with less rigor to non-attorneys who are not subject to 'professional standards' and should be permitted more leeway than a licensed attorney." Borowsky provides no authority for this argument and offers no alternative standard that he suggests should govern. Moreover, Borowsky's argument misinterprets the superior court's ruling and *Leavy* itself.

¶19 The superior court granted a new trial under Rule 59(a)(1), which provides a court may grant a new trial on various "grounds

materially affecting [the moving] party's rights," including "misconduct of the . . . prevailing party." Ariz. R. Civ. P. 59(a)(1)(B). Thus, the court applied the proper rule and standard in granting the motions for new trial.

**¶20** The superior court cited and applied *Leavy*. It also cited and applied several other binding Arizona appellate court decisions addressing prejudice, trial misconduct and the appropriate relief in granting the motions for new trial. *See, e.g.*, *State v. Gentry*, 247 Ariz. 381 (App. 2019); *Varco, Inc. v. UNS Elec., Inc.*, 242 Ariz. 166 (App. 2017); *State v. Hatch*, 225 Ariz. 409 (App. 2010); *Liberatore v. Thompson*, 157 Ariz. 621 (App. 1988). Accordingly, the court did far more than apply *Leavy* in concluding a new trial was required based on Borowsky's repeated trial misconduct.

**¶21** Although *Leavy* addressed an attorney's trial misconduct, Borowsky has not shown how the principles in that case should not apply to a party's trial misconduct. That is particularly true given Borowsky's repeated violation of court directives given directly to Borowsky by the trial judge. Rule 59(a)(1) and the cases relied upon by the superior court properly provide guidance to determine the consequences for a party's trial misconduct. The superior court properly set forth the applicable legal standards in Arizona for considering whether to grant a motion for new trial based on trial misconduct.

### C. Borowsky Has Not Shown the Superior Court Erred in Applying Arizona Law.

**¶22** Borowsky argues the superior court erred in finding the jury was prejudiced because "none of [the three *Leavy*] factors—and certainly not all three—are satisfied by Borowsky's conduct." The court addresses these three factors in turn.

#### 1. The Record Supports the Superior Court's Finding that Borowsky's Misconduct Was Significant.

**¶23** The first *Leavy* factor focuses on whether "the misconduct is significant, especially if the record establishes knowing, deliberate violations of rules or court orders that a litigant may confidently expect to be observed by his or her adversary." 188 Ariz. at 73. Borowsky argues that "two passing references to Brooks' criminal background . . . does not justify a new trial because nothing but . . . speculation exists to demonstrate that the fleeting testimony had any effect on the jury at all." The record, however, shows that Borowsky's trial misconduct was far more significant than these "two passing references."

¶24      During trial, Borowsky repeatedly violated the court's pretrial orders precluding evidence. Borowsky's misconduct included multiple unprompted references to (1) Brooks' prior felony conviction,[2] (2) Brooks and Johnson's unrelated joint business activities, (3) Johnson's unrelated business activities and his alleged involvement in the loan, (4) Millenium Banc LLC and (5) Auto Title Loans USA. The superior court explicitly precluded all those references in its pretrial orders. The court explained its rulings to Borowsky personally, yet his improper conduct continued.

¶25      Borowsky repeatedly refused to abide by the court's instructions to limit his answers to the questions asked. Borowsky repeatedly attempted to avoid answering questions during cross-examination, prompting the court to repeatedly admonish him and to strike, on dozens of occasions, non-responsive, prejudicial responses by Borowsky. In fact, the court admonished Borowsky every day he testified. Borowsky then violated court orders when he tried to address the jury and control the questions asked during his testimony despite being represented by counsel throughout the trial.

¶26      Borowsky then disrupted trial proceedings while others testified. During Brooks' direct testimony, Borowsky was waving his hands, kicking his head back, snickering, snorting and laughing in response to Brooks' testimony. Even after the court's admonition, Borowsky's misconduct continued, and the court later directed Borowsky to control himself if he did not want to be removed from the courtroom.

¶27      During oral argument on appeal, Borowsky conceded the superior court had the discretion to grant a mistrial based on Borowsky's references to Brooks' previous felony convictions in violation of the court's order in limine. Although arguing the court then was precluded from waiting until after the verdict to grant a new trial, Borowsky has cited (and the court has found) no rule that estopped the superior court from waiting until the end of trial to assess the prejudicial nature of misconduct.

¶28      As shown by the record, Borowsky's misconduct was a prolonged series of knowing, deliberate, persistent misconduct that

---

[2] Borowsky's argument based on the superior court's statement about how many felony convictions Brooks has misses the mark. Borowsky was precluded by the court's pretrial order from referencing any felony conviction, yet Borowsky repeatedly violated that order.

violated court orders, rules and instructions. As this court noted not long ago, "cumulative actions" may lead to granting a new trial based on misconduct. *Varco*, 242 Ariz. at 173 ¶ 22 (citations omitted). On this record, Borowsky has shown no error in the court concluding that his repeated trial misconduct was significant.

### 2. The Record Supports the Superior Court's Finding that Borowsky's Trial Misconduct Was Prejudicial.

¶29 The second *Leavy* factor asks whether "the misconduct is prejudicial in nature because it involves essential and important issues, but the extent is impossible to determine in a close case." 188 Ariz. at 73. In other words, "[t]he trial court must make a factual determination of whether the misconduct has affected the result; as with most factual determinations, this is a matter within [the trial court's] discretion." *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455 (1982). Borowsky raises two challenges to the finding that his repeated trial misconduct was prejudicial.

¶30 Borowsky argues *Leavy* only applies "in a close case" and this was not a close case. Borowsky bases this argument on the fact "the jury overwhelmingly believed Borowsky and resoundingly disbelieved the Defendants," noting the jury found for Borowsky "on thirty-nine of his claims, and only found against Borowsky on two of his claims. The jury also rejected all five . . . counterclaims against Borowsky and issued verdicts in Borowsky's favor on every counterclaim." Numerically, Borowsky correctly counts the jury's verdicts. But he overlooks the fact that those verdicts resulted from a flawed trial given his repeated trial misconduct. In granting a new trial, the superior court concluded that Borowsky's repeated trial misconduct materially affected Defendants' rights. Flawed verdicts following a party's repeated trial misconduct are not a proper benchmark to determine whether this was a close case.

¶31 The prolonged and hard-fought pretrial history here also supports the superior court's conclusion. In addressing the parties' competing summary judgment motions, the court noted:

> The evidence of record is significantly more than documents, deposition transcripts, emails and text messages; it is a web of relationships and conduct that requires multiple levels of determination of credibility to untangle . . . The resolution of the claims in issue must be left to

the trier of fact, who will have the opportunity
firsthand to assess the parties and their actions.

¶32 Borowsky argues his trial misconduct did not involve "essential and important issues" because the "two passing references" to Brooks' prior felony convictions did not impact Brooks' credibility. That argument, as discussed above, significantly understates his trial misconduct. And it does not account for the fact that witness credibility can be an essential issue in cases, like this, involving diametrically conflicting testimony. *See Leavy*, 188 Ariz. at 72 (noting "one of the improper remarks was directly relevant to the issue of witness credibility, the essential issue in this case of diametrically conflicting stories"). On this record, Borowsky has failed to show that the court erred in finding his repeated trial misconduct was prejudicial.

### 3. The Record Supports the Superior Court's Finding that Borowsky's Trial Misconduct Apparently Was Successful in Achieving His Goals.

¶33 The third *Leavy* factor looks at whether "the misconduct is apparently successful in achieving its goals." *Id.* at 73. Borowsky argues "a new trial is not justified unless the [misconduct] actually can be shown to have resulted in an erroneous verdict." But as the cases Borowsky cites discuss, the trial court need only "make a factual determination of whether the misconduct has affected the result," not a finding that the misconduct caused an erroneous verdict. *See, e.g.*, *Liberatore*, 157 Ariz. at 620 (citations omitted); *see also Ring*, 141 Ariz. at 68 (requiring "the improper conduct actually influenced the verdict"). Given evidentiary prohibitions, if nothing else, the "but for" causation standard Borowsky advances would be impossible to meet. *See* Ariz. R. Evid. 606(b)(1) (prohibiting inquiry into jury deliberations "[d]uring an inquiry into the validity of a verdict in a civil case"). Moreover, the misconduct itself may make it impossible to determine the effect on the outcome. *See Leavy*, 188 Ariz. at 73 (citing cases).

¶34 The superior court recognized the verdicts and damages awarded do not, in and of themselves, establish passion or prejudice. But the duplicative and excessive nature of the damages awarded, in addition to the evidence of Borowsky's persistent trial misconduct on key issues, supports the court's conclusion that Borowsky's misconduct affected the outcome of the trial. That conclusion follows *Varco,* which applied *Leavy*'s analysis and noted "[s]uch misconduct does not require a finding that the jury has reached an erroneous result; indeed, misconduct itself may make it impossible to determine the effect on the outcome. The [repeated trial

misconduct] all support the court's conclusion that Varco was prejudiced." 242 Ariz. at 174 ¶ 25 (citations omitted).

¶35 Borowsky claims the superior court erred in granting a new trial rather than ordering a remittitur, arguing deference was owed to the jury's damages award. *White v. Greater Arizona Bicycling Association*, the authority Borowsky cites for that argument, *reversed* the denial of a motion for new trial on damages. 216 Ariz. 133, 142 ¶ 30 (App. 2007). And *White* did not involve trial misconduct, but found a new trial was warranted because the jury found no compensable loss in a wrongful death action. *Id.* at 135 ¶ 1. Although acknowledging White's declaration that "it is a jury's role to determine the amount of damages," *id.* at 138 ¶ 15, that directive does not preclude the grant of a new trial following a trial infected with repeated trial misconduct by a party. On this record, Borowsky has failed to show the court erred in finding his repeated trial misconduct apparently was successful in achieving his goals.

¶36 As the Arizona Supreme Court has noted, this court's role on appeal is to "determine whether, resolving every conflict in the evidence in support of the order, substantial evidence supports the trial judge's order" granting a new trial. *Fischer*, 242 Ariz. at 52 ¶ 28. Here, substantial evidence supports the superior court's findings and the resulting grant of a new trial. Accordingly, on this record, Borowsky has failed to show the court abused its discretion in granting a new trial based on his repeated trial misconduct.

### D. The Superior Court Did Not Err in Ordering a New Trial on All Counts.

¶37 Arguing in the alternative, Borowsky asserts that there is "no basis for ordering a new trial for Defendants Johnson and Pate." Borowsky claims it is "irrational and [] entirely speculative" to "impermissibly presume that the jury was prejudiced against Pate and Johnson because Borowsky said Brooks had a criminal record." Again, Borowsky's argument profoundly understates his trial misconduct. He has also shown no abuse of discretion in the court ordering a new trial on all counts.

¶38 "Limiting a new trial to only some of the issues lies within the sound discretion of the court. Partial new trials are not recommended because they create much opportunity for confusion and injustice." *Styles*, 185 Ariz. at 451 (citing cases). "A partial trial should be granted when the issues are not inextricably intertwined and can be separated without prejudice to the parties. Any doubt should be resolved in favor of a trial on all the issues." *Englert*, 199 Ariz. at 27 ¶ 15 (citing cases); *accord* Ariz. R. Civ.

P. 59(e) ("A new trial, if granted, must be limited to the question or questions found to be in error, *if separable*.") (emphasis added).

¶39        As discussed above, Borowsky's trial misconduct extended far beyond the testimony about Brooks' criminal record and included prejudicial and precluded testimony about both Brooks and Johnson. Borowsky's claims against Defendants included both direct and derivative claims. The superior court, which saw the witnesses, heard the testimony and personally observed the misconduct, found the claims and the parties were "inextricably intertwined. Indeed, Borowsky alleged that [Defendants] conspired together or aided and abetted one another with respect to some of the alleged tortious conduct." On this record, Borowsky has failed to show that the court erred in granting a new trial on all counts.

## II.    The Superior Court Did Not Err in Awarding Defendants Attorneys' Fees.

¶40        Borowsky argues the superior court erred in awarding Defendants attorneys' fees incurred at trial as sanctions for the same reasons he contends that the court erred in ordering a new trial. As explained above, the court did not err in ordering a new trial based on Borowsky's trial misconduct. And awarding fees incurred at trial based on a party's trial misconduct requiring a new trial is an appropriate sanction. *Taylor*, 130 Ariz. at 523 (citing authority). Thus, Borowsky has shown no error in the court awarding Defendants their attorneys' fees incurred during the first trial.

## III.    Defendants Are Awarded Their Taxable Costs Incurred on Appeal.

¶41        Borowsky requests his reasonable attorneys' fees and costs pursuant to A.R.S. § 12-341 and ARCAP 21. Brooks requests an award of attorneys' fees and costs incurred on appeal, citing ARCAP 21. Johnson and Pate request an award of attorneys' fees and costs incurred on appeal, citing A.R.S. § 12-349 and ARCAP 21. Borowsky is not the successful party on appeal. *See* A.R.S. § 12-341. Johnson and Pate have not shown Borowsky violated A.R.S. § 12-349 in pressing this appeal. And ARCAP 21 is not an independent basis for an award of attorneys' fees. *See* ARCAP 21(a)(2). This court has the discretion to decline to award fees if the requesting party does not "specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees." *Id.* ARCAP 21(a)(2) "only establishes the procedure for claiming attorneys' fees and does not create any substantive right to them." *Id.*

**¶42** For these reasons, all requests for attorneys' fees incurred on appeal are denied. Defendants may recover their taxable costs incurred on appeal contingent upon their compliance with ARCAP 21(b).

## CONCLUSION

**¶43** The orders granting a new trial and imposing an award of attorneys' fees as sanctions against Borowsky are affirmed.

